LOUISA W. ROGERS *vs.* BOSTON CLUB & another.

Suffolk. January 20, 1910. — February 24, 1910.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Equity Jurisdiction,* For appointment of receiver of insolvent corporation organized under R. L. c. 125, Remedy at law, Multiplicity of suits. *Corporation,* Organized under R. L. c. 125 as social club, By-laws. *Receiver. Equity Pleading and Practice,* Appeal.

Upon the averments of a bill in equity, it here was assumed upon demurrer, that, because the provisions of R. L. c. 163, §§ 143–149, relating to proceedings in insolvency by and against insolvent corporations, are suspended by the bankruptcy law of the United States, and because § 4 (b) of the bankruptcy act of 1898 does not include among the corporations which may become bankrupts under that act a corporation organized under R. L. c. 125 as a social club, a suit in equity may be maintained by a judgment creditor of such a corporation so organized, which has become insolvent, for the benefit of himself and other creditors, for the appointment of a receiver to collect all the assets of the corporation and all moneys due to it from its members.

In a suit in equity for the appointment of a receiver of the property of an insolvent corporation organized as a social club under R. L. c. 125, a receiver was appointed by the court and was directed to collect all the assets of the corporation and all moneys due to it from its members. The receiver filed two petitions in the suit in equity, one for the collection of the regular assessments due from the members and of the debts due from them to the club for food and refreshments, and the other for the collection of a special assessment made under a by-law of the club by its executive committee. Upon the first petition an order was made that service of process should be made upon twelve respondents designated as representatives of a class consisting of the three hundred and forty-three members of the club. A final decree was entered against the twelve designated respondents, ordering the payment of the sums of money found to be due from them respectively. From this decree the respondents appealed.

Upon the second petition a decree was entered dismissing the petition. From this decree the receiver appealed. A question being raised whether these appeals were ripe for hearing by this court or whether they must await a final decree in the receivership suit ordering a distribution of the property of the corporation among its creditors, it was *held,* that the appeal from the decree upon the receiver's first petition plainly was ripe for hearing, because the rights of the appealing respondents could not be protected if the hearing was postponed to any later time, and that the appeal of the receiver from the disallowance of his claims founded on the special assessment comprised such substantive elements in the litigation that under the special circumstances of the case that appeal well might be heard with the others.

A receiver of the property of an insolvent corporation, organized under R. L. c. 125 as a social club, who had been appointed in a suit in equity brought by a judgment creditor for the benefit of himself and other creditors against the corporation, and who had been directed by the court to collect all the assets of the corporation and all moneys due to it from its members, filed a petition in the suit in equity, upon which process was ordered to be served on twelve respondents designated as representatives of a class consisting of three hundred and forty-three members of the club, to collect assessments due from all the members under a by-law of the corporation and also debts due from many of the members for food and other refreshments. *Held,* that the petition could not be maintained, and that the receiver's remedy was at law, the remedy at law not being inadequate by reason of the multiplicity of the actions required to be brought, because such multiplicity was necessary to accomplish the ends of justice on account of the divers interests of the several respondents. *It was intimated,* that the same conclusion might have been reached, even if the receiver had confined his petition to the claims for annual dues against all the different members of the corporation, and had not included the claims against a large number of the members for food and refreshments, which had no more in common than the bills of any one tradesman against his customers.

A by-law of a corporation, organized under R. L. c. 125 as a social club, provided that an assessment upon the members might be made by a majority of the executive committee. The executive committee consisted of twenty members, fifteen of whom were chosen specially and five of whom were members *ex-officiis* as officers of the club. A by-law, other than that authorizing the assessment, provided that five members of the executive committee should constitute a quorum. A vote imposing a special assessment on the members of the club was passed at a meeting of the executive committee when a quorum was present and was voted for by a majority of those present which was not a majority of the whole committee. *Held,* that the attempted assessment was invalid, the power to impose such an assessment being given to a majority of the whole committee and not to a majority of a quorum of five.

KNOWLTON, C. J.   The Boston Club, a corporation organized under the R. L. c. 125, for social and other kindred purposes, became deeply indebted to many persons.   It had small assets, and it made a voluntary assignment for the benefit of its creditors.   Subsequently this bill in equity was brought in behalf of a judgment creditor for the benefit of herself and other creditors, against the corporation and the assignee, praying that a receiver

might be appointed to collect and receive from the assignee and from all other persons, including the members of the corporation, all the corporation's assets, and to distribute them ratably among all such creditors as should prove their debts before the court, and to dispose of any balance, if any there should be, in such manner as the court should direct.

Inasmuch as the statutes of this Commonwealth relative to proceedings in insolvency by or against insolvent corporations (R. L. c. 163, §§ 143–149) are suspended by the bankrupt law of the United States, and as this class of corporations is not included in those whose estates may be settled under this law (bankruptcy act of 1898, § 4 (b)), we may assume that, upon its averments, the plaintiff's bill was within the jurisdiction of the court. Upon this bill a receiver was appointed, who was directed to collect all the assets of the corporation and all moneys and debts due it from the members thereof.

The receiver filed a petition setting forth the names of all the alleged members of the Boston Club, more than three hundred in number, in which petition, as it was amended, he averred that these members were indebted to the club in the sum of $25 each for the half of the annual dues to June 1, 1908, under a by-law of the club, and in the same sum, under the same by-law, for dues to December 1, 1908, and that forty-one of these alleged members were indebted to the club in various sums for ordinary charges for food and other refreshments which they had received, and praying that an account might be taken of the several amounts due from the several respondents, and for a decree requiring payment to the receiver of such sums as should be found due from each of them. Upon this petition there was an order of notice, the notice to be given by sending by mail a printed copy to counsel of record, and to twelve of the respondents " designated by the court upon whom service of this order shall be made in lieu of serving upon all the persons mentioned in this petition." After this service upon these designated persons most of them appeared and filed demurrers and answers to the petition. The demurrers having been overruled,* an appeal was taken to this court. Afterwards,

---

* In the Superior Court this suit was heard at all its stages by *Richardson*, J., who made all the orders and decrees therein.

upon a hearing, there was an interlocutory decree, or order for a final decree, in which it was adjudged that, under the by-laws of the corporation, each resident member was bound to pay an annual assessment of $50, and each non-resident member an annual assessment of $25; that these designated respondents and other respondents, three hundred and forty-three in all, were members of the club who had neglected and refused to pay the amount of this annual assessment for the half year ending December 1, 1908, although one hundred and fifty-three of them had paid the instalment for the half year ending June 1, 1908, and that forty-one members of the club, including six of these designated members, were indebted to the club in various stated sums for ordinary charges for food and other refreshments. It was also decreed that, to save expense of service of the petition upon all of the three hundred and forty-three members, the twelve respondents were designated as persons upon whom service of process should be made as representatives of a class; that the payment of the assessment was necessary in order that the indebtedness of the club might be paid and that the designated respondents, respectively, should pay to the receiver the amounts found due from each of them, as stated in the decree, being in part for the annual assessments, and in part for the charges for food and refreshments. Subsequently a final decree against these respondents was made, directing payment of these sums, and that executions should issue against them severally to enforce payment. From this decree an appeal was taken to this court.

A second petition, similar in form, was presented to the court, to recover the amount of a special assessment made under a by-law by the executive committee. Upon this petition, after similar proceedings, the judge found that the assessment was invalid because the by-law authorized it to be made only by a majority of the committee present at the time of making it, and a decree was entered dismissing the petition. From this decree the receiver appealed.

An appeal was also taken by some of the defendants from the decree of the court allowing claims against the corporation, and especially the claims of Shepard Norwell Company, Smith Patterson Company and McKinney and Waterbury Company.

A question has been raised as to whether these appeals are ripe for hearing, or whether they must await a final decree ordering distribution of the property of the corporation among the creditors. The decree for payment to the receiver by the members of the corporation and awarding execution against them purports to be a final decree, and it is in fact a final decree in the separate and independent proceeding to which it relates. Not only is payment decreed, but executions are ordered for the enforcement of payment. This appeal is plainly ripe for hearing. The rights of the appealing parties could not be protected if the hearing were postponed to any later time. For similar, although not quite so strong reasons, we are of opinion that the appeal of the receiver from the disallowance of his claims for special assessments should be heard at this time. The determination of the amount of the claims against the estate and the appeal from the allowance of certain claims should not await a decree for the final distribution of the assets. It is so far independent, and it comprises such substantive elements in the litigation, that in the peculiar circumstances of this case the appeal may well be heard now with the others.

The demurring respondents assigned six causes of demurrer, among which were want of equity, misjoinder of respondents and multifariousness. The first petition was to recover a large number of legal claims from debtors of the corporation. Upon the facts found by the judge, as appears in his order for a decree, the members of the corporation were indebted under a by-law of the corporation by which they had agreed to be bound. Many of them were also indebted for goods sold and delivered by the corporation. The case is quite unlike the summary proceedings which the receiver may take by application to the court to protect his right of possession to tangible property of a corporation which is transferred to him by the action of the court under his appointment. Such property is in the control of the court whose representative he is. The collection of a debt stands differently. *Smith* v. *Johnson,* 57 Ohio St. 486. *State Bank of New Brunswick* v. *First National Bank of Plainfield,* 7 Stew. 450. *Andrews* v. *Paschen,* 67 Wis. 413. *Wheaton* v. *Daily Telegraph Co.* 124 Fed. Rep. 61. *Horn* v. *Pere Marquette Railroad,* 151 Fed. Rep. 626, 629. As to these claims the receiver had no greater

rights than the corporation. The respondents were severally liable in an action of contract, each for the amount of his debt. Against each the receiver had a plain, adequate and complete remedy at law. The only question as to this last proposition is whether his remedy at law would be inadequate because separate actions would involve a multiplicity of suits. The only branch of jurisdiction in equity to which the receiver can appeal for the maintenance of his petition is that which is exercised to avoid a multiplicity of suits.

Upon this subject there have been a great many decisions, with considerable conflict among them. The subject is very ably and fully discussed, with a citation of a large number of cases, in Pom. Eq. Jur. (3d ed.) §§ 251 to 274. It seems now to be settled by a great weight of authority that jurisdiction may sometimes be exercised on behalf of a single party against a numerous body, although there is no common title nor community of right or interest in the subject matter among those individuals, and where there is and because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body. On the other hand, as was said by Mr. Justice Peckham, speaking for the court in *Hale* v. *Allinson*, 188 U. S. 56, 77, " The single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction is not in all cases enough to sustain it. It might be that the exercise of equitable jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless be attended with more and deeper inconvenience to the defendants than would be compensated for by the convenience of a single plaintiff, and where the case is not covered by any controlling precedent the inconvenience might constitute good ground for denying jurisdiction." It seems too plain for doubt that the receiver's first petition in this case, which joined legal claims for annual dues against all the different members of the corporation, and included charges against a large number of them for food and refreshments, cannot be sustained on any principle of equity jurisprudence. As to these charges, there was no community of interest among the respondents in any question of law or fact involved,

or in the kind or form of relief demanded.    The petition included
claims for a large number of separate debts which had no relation
to one another.    They had no more in common than the bills
of a grocer against the customers to whom he has sold goods.
It follows that the decree overruling the demurrers and the
final decree directing payment and awarding execution must
be reversed.

A question of more difficulty, which was included in the
appeal and has been argued by counsel, and which may arise
again in subsequent proceedings in the case, is whether the
claims against all the members for the annual dues can be
joined in a petition in equity.    Similar questions have been
passed upon by the courts.    A bill was brought by a receiver
of a State banking corporation in Iowa, to recover from stock-
holders assessments levied to enforce a personal liability for
debts under a law of that State.    It was held that the suit
could not be maintained, and that the remedy was at law.
*Tompkins* v. *Craig*, 93 Fed. Rep. 885.    In *Hale* v. *Allinson*,
102 Fed. Rep. 790, there was an attempt by a receiver to
enforce in equity a personal liability imposed by statute upon
stockholders in a corporation, and it was held that there was
no jurisdiction in equity.    Judge McPherson in giving the
opinion said: " Two classes of questions remain to be de-
cided: The first is whether a given stockholder was ever liable
as such; and the second is whether, if he were originally liable,
his liability has ceased, either in whole or in part.    Manifestly, as
it seems to me, the defendants have no common interest in these
questions, or in the relief sought by the receiver against each
defendant.    The receiver's cause of action against each de-
fendant is, no doubt, similar to his cause of action against every
other, but this is only part of the matter.    The real issue, the
actual dispute, can only be known after each defendant has set
up his defense, and defenses may vary so widely that no two
controversies may be exactly or even nearly alike.    If, as is
sure to happen, differing defenses are put in by different de-
fendants, the bill evidently becomes a single proceeding only in
name.    In reality it is a congeries of suits with little relation to
each other, except that there is a common plaintiff, who has simi-
lar claims against many persons.    But as each of these persons

became liable, if at all, by reason of a contract entered into by himself alone, with the making of which his co-defendants had nothing whatever to do, so he continues to be liable, if at all, because he himself, and not they, has done nothing to discharge the liability." This decree was affirmed in 106 Fed. Rep. 258, by the unanimous decision of the Circuit Court of Appeals, which adopted the opinion given in the Circuit Court. The same question arose under the same statute in *Hale* v. *Allinson*, 188 U. S. 56, 77, 78, and the same result was reached by the Supreme Court of the United States, which quoted at length from the opinion of Judge McPherson and adopted it as a statement of the law. In this case too, on page 78, Mr. Justice Peckham reaffirmed the rule stated in *Kennedy* v. *Gibson*, 8 Wall. 498, 505, and followed in *Bailey* v. *Tillinghast*, 99 Fed. Rep. 801, and in several other cases, as to the enforcement of the statutory liability of stockholders for debts in a national bank, that "Where the whole amount is sought to be recovered the proceedings must be at law. Where less is required the proceeding may be in equity, and in such case an interlocutory decree may be taken for contribution."

The considerations which led to the decision in *Hale* v. *Allinson*, apply with almost equal force to the present case. There is one question presented by the receiver in which the respondents all have a common interest, namely, whether there was a by-law and a liability of members under it, as he avers. There are other questions which pertain to each individual respondent, namely, whether he became a member of the corporation so as to be subject to the liabilities of members, and if so, whether he ceased to be a member before this particular liability attached, and whether, if it attached, it was ever discharged. In none of these questions has any other member any interest. As to them, there must be a separate trial against each respondent.

This is not a case in which a decree for payment can be made against a particular respondent without service upon him. As to questions of the kind above stated, he is not a member of a class who can be represented by other members. Before he can be found liable as for a debt, he must be given notice of the claim against him, and an opportunity to make his defense. In-

asmuch as there must be a service of process upon each defendant, it would seem to be a more simple and orderly method to bring an action at law against each member, and almost if not quite as economical a way for the receiver.

We are inclined to the view that this case should be governed by the decision above stated, and that it should be treated as presenting nothing but separate claims for the payment of debts in which different questions may arise, such that they cannot properly be joined in equity for the purpose of preventing a multiplicity of suits.

The respondents contend that there can be no liability for these annual dues, because a receiver has been appointed for the property of the corporation, and the respondents have not enjoyed the expected benefits of membership. From what appears upon this record, we must assume that the liability for the dues for the year ending December 1, 1908, accrued on December 1, 1907, and that nothing had occurred at that time to relieve the respondents from liability for this annual assessment. We have no report of evidence, nor anything on the subject but the pleadings and the decrees. Dealing with the case only upon the facts before us, we hold that this defense is not made out.

Nor is there any good ground for the appeal of the respondents as to the allowance of the claims of creditors against the corporation, including the claims of Shepard Norwell Company, Smith Patterson Company and McKinney and Waterbury Company. The decree as to these is founded upon findings of fact by the trial judge which are well sustained by the evidence.

The appeal of the receiver from the dismissal of the second petition rests upon the fact that a quorum of the executive committee were present when the special assessment was made, and the vote was passed by a majority of the quorum. The by-law under which action was taken provides that an assessment may be made by a majority of the executive committee. The committee consisted of twenty members, fifteen chosen specially, and five other officers who were members of the committee *ex officiis*. By article 3, section 10, five members of the committee constitute a quorum. The question is whether the by-law

authorizing a special assessment to be made by a majority of the committee means by a majority of the quorum, or a majority of the whole committee. We are of opinion that the judge was right in holding that it means a majority of the whole committee. It gives an unusual and important power. It uses words which naturally signify more than half of the whole number of the committee. It is hardly to be expected that this power would be given to a majority of a quorum of five, which is so small a part of the whole commitee.

> *Decree reversed; demurrers sustained; decree as to allowance of claims affirmed; decree dismissing receiver's second petition affirmed.*

*H. W. Ogden,* (*W. A. Powers* with him,) for members of the Boston Club.

*W. B. Durant,* for the receiver.

*J. J. Feely,* for creditors.