INTERNATIONAL PAPER COMPANY ET AL. *v.* BELLOWS FALLS CANAL COMPANY.

May Term, 1913.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 20, 1914.

*Equity—Bill—Sufficiency—Equitable Estoppel—Jurisdiction— Construction of Written Instruments—Multiplicity of Suits —Identity of Issues—Discretion of Court—Removal of Cloud—Supplemental Bill.*

The doctrine of equitable estoppel is as available at law as in equity, and so is not a sufficient ground for equitable jurisdiction.

A bill in equity, alleging that defendant, which had conveyed property to orators, claimed a lien thereon for taxes paid by defendant on its property in another state, is not good as a bill to quiet title and remove a cloud, as the only lien, not void on its face, which defendant could put on the property is an attachment,

which is by our statute made an ordinary mode of process, and chancery cannot interfere to defeat the statute.

A court of law has as full power as a court of equity to construe a written instrument, and so the fact that my claimed rights in your property depend on the construction of a written instrument does not authorize a bill in equity by you to compel me to assert my rights in equity rather than at law, whither I may choose to resort.

The fact that the court of chancery, strictly *pro forma*, overruled a demurrer to a bill to remove a cloud on title cannot, on appeal, be construed to be the exercise of the court's discretion to grant that relief, precluding review.

In order to give equity jurisdiction, on the ground of multiplicity of suits of a bill by a number of orators, having separate and distinct interests, against one defendant, the suit must result in a simplification or consolidation of issues, as distinguished from a bundle of mere separate and distinct suits, raising different issues.

Equity has no jurisdiction, on the ground of multiplicity of suits, over a bill by numerous orators to whom defendant at different times, and by separate instruments with different provisions, had granted distinct and separate water rights in its property, where orators claimed equitable estoppel, and where the issues between each of the orators and defendant would have to be separately tried and determined.

The suggestion that a suit in equity by numerous orators against one defendant would relieve him from a multiplicity of suits, from which he does not ask to be eased, is not favorably looked upon as a ground of equitable jurisdiction.

A supplemental bill in equity is a different thing from an amended bill, and where the original bill warrants no equitable relief, orators cannot make a case by a supplemental bill setting up a new cause of action.

The jurisdiction of the court of chancery is governed by well-settled principles, and a bill seeking equitable relief should state facts that bring the case within those principles.

APPEAL IN CHANCERY. Heard on demurrer to the bill, at the April Term, 1913, Windham County, *Taylor*, Chancellor. Demurrer overruled, strictly *pro forma*, bill taken as confessed.

and decree for the orator.    The defendant appealed.    The opinion states the case.

*Clarke C. Fitts, James W. Remick,* and *Warner A. Graham* for the orators.

The bill is maintainable as in the nature of "a bill of the peace." 1 Pom. Eq. Jur. 273; *Lovett* v. *Prentice,* 44 Fed. 459; *Collins* v. *Barksdale,* 23 Ga. 602; *N. Y. & N. H. R. R. Co.* v. *Schoyler,* 1 Abb. Prac. 417; Notes, 1 Pom. Eq. Jur. (3rd ed.) §§256, 257, 260, 261. The bill is also maintainable to prevent a multiplicity of suits. *Hale* v. *Allison,* 188 U. S. 78; *Nevitt* v. *Gillespie,* 2 Miss. 108, 26 Am. Dec. 697; *Black* v. *Shreeve,* 7 N. J. Eq. (3 Halst.) 440; *Union Pac. Ry. Co.* v. *Cheyenne,* 113 U. S. 516; *Bode* v. *New England Inv. Co.,* 6 Dak. 499, 42 N. W. 658; *McConnaughy* v. *Pennoyer,* 43 Fed. 339; *Greedup* v. *Franklin County,* 30 Ark. 633. It is also maintainable to enforce an equitable estoppel. *Martin* v. *Maine Central R. Co.,* 93 Me. 100; *Wilkins* v. *Gibson,* 113 Ga. 31, 38 S. E. 374; *Whiteselle* v. *Texas Loan Agency,* Tex. (Civ. App.) 27 S. W. 309; Pom. Eq. §§803, 804, 805; *Cornish* v. *Abington,* 4 Hurl. & N. 549; *Cont. Bank.* v. *Bank of Com.,* 50 N. Y. 575; *Stevens* v. *Dennett,* 51 N. H. 324; *White* v. *Langdon,* 30 Vt. 599; *Strong* v. *Ellsworth,* 26 Vt. 366. The bill is also maintainable to redress wrongs that the law cannot reach. *Leing* v. *Zeden,* 40 L. J. Ch. N. S. 155; *Bushbey* v. *Bushbey,* 5 Mad. 297; *Bumbury* v. *Bumbury,* 3 V. R. 644; *Penn.* v. *Lord Baltimore,* 1 Vesey, 444; *Cranstown* v. *Johnston,* 3 Vesey, J. R. 170; *Bank of Bellows Falls* v. *Railway Co.,* 28 Vt. 470; *Railway Co.* v. *Railway Co.,* 46 Vt. 792; *Field* v. *Holbrook,* 3 Abb. P. R. 377; *Kittle* v. *Kittle,* 8 Daley (N. Y.) 72; *Locomobile Co.* v. *Bridge Co.,* 80 N. Y. Supp. 288; *Gage* v. *Trust Co.,* 86 Fed. 984; *Machine Co.* v. *Wright,* 150 Fed. 244; *Manufacturing Co.* v. *Worcester,* 23 N. H. 462, 7 L. R. A. (N. S.) 15 (case note); *Armstrong* v. *Armstrong,* 66 L. T. N. S. 384; *Port Arlington* v. *Soulby,* 3 Myl. & K. 104; *Edgell* v. *Clark,* 45 N. Y. Sup. 979; *Carson* v. *Dunham,* 149 Mass. 52.

*Stickney, Sargent & Skeels and Streeter, Demond, Woodworth & Sulloway* for the defendant.

The bill cannot be maintained as a bill for the removal of a cloud from the orators' titles. *Rooney* v. *Soule,* 45 Vt. 303; *Van Doren* v. *Mayor of New York,* 9 Paige 288; *Mallory* v. *Dougherty,* 16 Wis. 267; *Munson* v. *Munson,* 28 Conn. 582; 1 Story's Eq. Juris. §700a and note; *Woodman* v. *Saltonstall,* 7 Cush. 181; *Blackmore* v. *Von Vleet,* 11 Mich. 252; *Wing, Admr.* v. *Hall & Darling,* 44 Vt. 118; *Parker* v. *Shannon,* 121 Ill. 452; *Waters* v. *Lewis,* 106 Ga. 758; *Devine* v. *Los Angeles,* 202 U. S. 313; *Guest* v. *Brookline,* 69 N. Y. 506; *Washburn* v. *Burnham,* 63 N. Y. 132; *Haeussler* v. *Thomas,* 4 Mo. App. 463. The bill cannot be maintained for the prevention of a multiplicity of suits. *Cloyes* v. *Middlebury Electric Co.,* 80 Vt. 108; *Dyer* v. *School Dist.,* 61 Vt. 96; *Mechanics Insurance Co.* v. *Distilling Co.,* 173 Fed. 888; *Equitable Life Assurance Society of the United States* v. *Brown,* 213 U. S. 25, 29 Sup. Ct. 404, 53 L. ed. 682; *Scottish Union etc. Insurance Co.* v. *J. H. Mohlman Company,* 73 Fed. 66; *Turner* v. *Mobile,* 135 Ala. 73; *Roanoke Guano Co.* v. *Saunders,* 56 So. 198, 35 L. R. A. (N. S.) 491; *Home Insurance Co.* v. *Jones,* 175 Fed. 567; *Rochester-German Insurance Co.* v. *Schmidt,* 175 Fed. 720; *Scruggs* v. *Insurance Co.,* 176 Fed. 224; *Hartford Fire Insurance Co.* v. *Ledford,* 151 Ill. App. 413; *Tribette* v. *Railroad,* 70 Miss. 182.

HASELTON, J. This is a bill in chancery, and came on for hearing upon demurrer to the bill. A decree was rendered, strictly *pro forma,* overruling the demurrer, adjudging the bill sufficient, and granting the orators the relief prayed for in the bill. The proceedings being *pro forma,* it was agreed that if the ruling below was sustained the decree should be reversed *pro forma* that further proceedings might be had.

The case made by the bill is this: The defendant is the owner in fee of a water power property consisting of a dam across the Connecticut river extending from Rockingham in Vermont to Walpole in the State of New Hampshire, and is also the owner in those towns and states of flowage rights created by the dam and of flash boards on the dam, and has certain rights by grant and by prescription in both states, and owns in fee a canal in Rockingham, Vermont, which extends from the pond of the dam mentioned and delivers water at the headgates of flumes leading to various mills in Rockingham owned by the orators respectively. The canal, flumes, and mill referred to are wholly within the town of Rockingham and the State of Vermont.

The orators by virtue of divers grants, leases, and contracts, respectively own certain land or certain interest in land in the town of Rockingham together with rights to take certain water from the canal to furnish power at their various mills and plants in the town of Rockingham.

The interest which Olive Adams now holds was first in order of time. The defendant conveyed it by deed in 1832. The deed conveyed a piece of land in the village of Bellows Falls in Rockingham, and also conveyed the privilege of taking water from the Bellows Falls Canal in Rockingham in a manner and amount subject to certain provisions and conditions which it is unnecessary to consider.

The interest of the orators John T. Moore & Son is in part that conveyed by the defendant company February 2, 1872. The conveyance referred to is of described pieces of land situated in the village of Bellows Falls in the town of Rockingham. The conveyance is subject to certain conditions, restrictions, and reservations which it is not necessary here to refer to. Along with the land there was conveyed one mill power subject to a perpetual annual rent specified. A mill power as described in certain "proposals" annexed to and made a part of the deed was the right to draw an amount from the nearest canal, or water course, of the Bellows Falls Canal Company.

A further interest of the orators John T. Moore & Son is an additional one-third of a water power conveyed by the Bellows Falls Canal Company January 1, 1874. This water power is described by reference to the proposals already referred to and this additional water power is made subject forever to an annual rent.

A still further interest of John T. Moore & Son was derived from a conveyance of further water power, subject to an annual rent forever, made by the defendant May 26, 1903.

A yet further interest of John T. Moore & Son was conveyed by the defendant May 9, 1908. The conveyance of this date amounted merely to a modification of the restrictions as to the use of the land conveyed in 1872.

The interest of the Moore & Thompson Paper Company, one of the orators, was conveyed to their predecessors in title December 31, 1881. On that date the defendant conveyed to such predecessors in title, by deed, two lots of land situated in the village of Bellows Falls in the town of Rockingham. The deed con-

7

tained certain restrictions and conditions, and the proposals already referred to were a part thereof. With the land went six mill powers for which there was forever to be paid a stated annual rent.

The interest of the Rockingham Paper Company, one of the orators, is in its origin and character as follows: December 31, 1881, the defendant gave a lease for a period of 99 years from January 1, 1882, of a parcel of land situated in the village of Bellows Falls in the town of Rockingham. There were certain conditions and restrictions which were a part of this lease, and the proposals already referred to were a part thereof. Along with the lease of land went two mill powers as described in the proposals.. A yearly rent was fixed for each mill power and a further yearly rent for the land leased. By an agreement made June 30, 1902, the assignees of the lease referred to acquired the right to six mill powers instead of two for the remainder of the term of 99 years, the lease then having between 78 and 79 years to run, and at the time of the bringing of this bill having between 68 and 69 years to run. All rights under the lease and agreement here referred to are now in the Rockingham Paper Company.

The interest of the Robertson Paper Company, one of the orators, is in origin and character as follows: November 29, 1886, the defendant gave a lease of three parcels of land and seven mill powers for the term of 99 years from the date of the lease, subject to conditions and restrictions, a reservation being made in the lease of a yearly rental for each mill power and of a yearly rent for the land. The proposals referred to were a part of this lease. All rights thereunder have been transferred to the Robertson Paper Company. At the time of the bringing of the bill this lease had between 73 and 74 years to run.

The interest of Wyman Flint & Sons Company, one of the orators, was acquired and is as follows: November 29, 1886, the defendant gave a lease of two parcels of land situated in Bellows Falls in the town of Rockingham, subject to certain conditions and restrictions, together with one mill power and a half, as described in the proposals referred to which are made a part of the lease, for the term of 99 years from the date of the lease. A yearly rent was reserved for the mill power and a further yearly rent for the land leased. The orator Wyman Flint & Sons Company is the owner of the rights under this lease for

the remainder of the term; and by an agreement between it and the defendant made May 26, 1903, it acquired the right for the remainder of the term to mill power in addition to that provided for in the original lease. At the time of the bringing of this bill the term of the lease now in question had between 73 and 74 years to run.

We now consider the origin, nature, and extent of the interest of the International Paper Company, the orator first named in the bill of complaint. January 10, 1898, the defendant deeded to the Fall Mountain Paper Company seven parcels of land situated in the village of Bellows Falls in the town of Rockingham. The proposals referred to were a part of the deed which also contained numerous further provisions not necessary to be referred to. This conveyance carried, together with the land, 135 mill powers, and provided that there should forever be, paid a yearly rental for each mill power. The interests of the Fall Mountain Paper Company were conveyed to the International Paper Company and an agreement was made January 31, 1898. by which the International Paper Company should be entitled to a grant from the Canal Company of the surplus water remaining to be disposed of by the Canal Company provided the Paper Company should apply for such a grant. December 4, 1901, the Canal Company and the Paper Company made an agreement putting an interpretation upon a previous stipulation between the Canal Company and the Fall Mountain Paper Company as to the rights to water power in case of an insufficiency of water passing through the canals.

These conveyances provided that the orators should have for prices named, varying amounts of mill power, to be taken from different points of the defendant's canal in Rockingham, Vermont.

For a long time the defendant has been taxed upon its mill power in the town of Walpole, New Hampshire, and has paid such taxes without claiming in any way, until 1911, that the orators, or any of them, were liable for any portion of the taxes assessed by the town of Walpole. But since 1911 the defendant claims that, by virtue of a provision of the proposals, affecting all of the orators but Olive Adams, it is entitled to a lien upon the granted and leased premises in the State of Vermont for taxes so assessed against it in the State of New Hampshire, and claims that it has a right of action therefor against the orators and has

notified them that it will look to them to be reimbursed for any and all payments which it has made or will make to the town of Walpole on account of such taxes.

The bill alleges that the defendant bases its claim upon a section of the proposals referred to which reads in part: ''It is therefore declared that each mill .power shall forever be subject to a perpetual annual rent * * * * which rent is to be paid in semi-annual payments forever, free from all charges or deduction whatever for taxes or assessments of every description which may be assessed or leased upon any granted or leased premises, after the making of the deed or lease, all of which are assumed by the grantees or lessees.''

The orators allege and insist that the defendant's construction of this proposal is wrong and contrary to what has been the understanding and intention of the parties, and that it is no concern of theirs whether or how much the defendant is taxed on its property in New Hampshire, and that the defendant has for many years, and until 1911, paid the taxes assessed against it in New Hampshire without any recourse or claimed right of recourse to the orators, and that the grants and leases refered to were made and agreed to upon an understanding in that regard and that the defendant, until 1911, never claimed that the orators or any of them were liable in any way for any portion of the taxes assessed by the town of Walpole.

The International Paper Company particularly avers that its purchase was made and its obligations assumed upon the distinct understanding that the construction of the proposals, asserted by the orators to be the true one, had always prevailed and been acted upon and would control in the case of its particular deed and lease, averring that the Fall Mountain Paper Company, from which the International Paper Company took its deed and lease, was owned and controlled by the same persons who owned and controlled the defendant.

The orators claim the right to maintain their bill to enforce an equitable estoppel, to remove a cloud upon title, and as a bill of peace to quiet title and prevent a multiplicity of suits, and generally to redress wrongs for which there is no adequate remedy at law.

We first consider the claims which if good at all would be good if each orator stood alone. The claim of an equitable estoppel is as available at law as in equity. To hold otherwise

would be to abandon ground now justly and firmly held by the courts of law.   *Vermont &c. Co.* v. *Ormsby,* 47 Vt. 709 ; *Kirk* v. *Hamilton,* 102, U. S. 68, 77, 26 L. ed. 79 ; *Marine Iron Works* v. *Wiess,* 148 Fed. 145, 154, 78 C. C. A. 279 ; *Diamond* v. *Manheim,* 61 Minn. 178, 63 N. W. 495 ; *Barnard* v. *German American Scm.,* 49 Mich. 444, 13 N. W. 811 ; Pom. Eq. Juris. §804.

The bill makes the claim that the threats and claims of the defendant, already referred to, constituted a cloud upon and an impairment of the title of the respective orators.   This claim is not quite clearly made in the orator's brief, though in view of what is said and of the cases cited bearing upon that question we do not feel at liberty to disregard it.   The bill alleges that the property of the orators and all their interests, easements, and rights under consideration have their situs wholly within the town of Rockingham in the State of Vermont.   But the bill alleges that the defendant claims that it is entitled to a lien upon the orators' property in Vermont for taxes paid by it on its own property in New Hampshire.   It is obvious under the allegations of the bill that the only lien, not void on its face, which the defendant contemplates · or can contemplate putting upon the orators' property is by way of attachment in suits. But in this State, whether wisely or unwisely, a writ of attachment is by statute made an ordinary mode of process, P. S. 1410, 1412, 1450, and a court of chancery cannot interfere to defeat the statute, though it sometimes lends its aid to render the attachment available.   *Rowan* v. *Union Arms Co.,* 36 Vt. 124.

Viewing the case as if each orator stood alone it seems clear that there is no ground on which the bill can be maintained. Primarily it is the privilege of a person asserting a claim to bring a suit or suits in the forum which the law affords him to determine the soundness of his claim in respect to his rights, and it does not matter that the question of his rights, if any he has, depends upon the construction of a written instrument, for a court of law has as full power as a court of equity in that matter.

It is urged by the orators that, if the bill so far as it relates to a cloud upon title is addressed to the discretion of the court, (*Quinn* v. *Valiquette,* 80 Vt. 434, 68 Atl. 515, 14 L. R. A. (N. S.) 962 ; *Rooney* v. *Soule,* 45 Vt. 303, *Wing* v. *Hall,* 44 Vt. 118), then the Court should take it that the court below in overruling the demurrer has exercised its discretion, and that on that point the

case is not reviewable here.  But the files show that the demurrer was overruled strictly *pro forma,* and such a ruling cannot be regarded as an exercise of discretion.  It is obvious from what was said at the outset, that it was regarded as inevitable that the case should come to this Court, and that the aim was to let it come without prejudice to the orators or to the defendant.

We now consider the case as it stands in consequence of the joinder of the orators in one suit—the claim that the bill is maintainable as a bill of peace and for the quieting of the orators' title, and as a bill to prevent multiplicity of suits; and we treat these claims as substantially one, since the nature of the case permits them to be so treated.

The doctrine of the jurisdiction in equity to avoid a multiplicity of suits was carried very far by Pomeroy in a discussion of great ability in his work upon Equity Jurisprudence, but there is an important limiting principle, recognized but not fully developed by him, which led his son, the editor of the last edition, to add two paragraphs to the text of the work, which in other respects was left unchanged.  1 Pom. Eq. Juris. 3rd ed. Preface.

The sections in question are numbered 251½, and 251¾.

In section 251½, it is said:  ''The equity suit must result in a simplification or consolidation of the issues: if, after the numerous parties are joined, there still remain separate issues to be tried between each of them and the single defendant or plaintiff, nothing has been gained by the court of equity's assuming jurisdiction.  In such a case, 'while the bill has only one number upon the docket and calls itself a single proceeding it is in reality a bundle of separate suits, each of which is no doubt similar in character to the others.' ''

We think that this limiting principle controls here.  It is not claimed that the orator, Olive Adams, is interested in the construction of the proposals referred to.  Her case is conceded to be different from that of the other orators.

The interests of the other orators, not to mention minor matters, were acquired by virtue of conveyance at different times from 1872 down to a comparatively recent date, and the matter of an equitable estoppel would naturally stand in a different manner in different cases.

In behalf of the International Paper Company, and of no other orator, it is claimed that there was a distinct understanding

as to the construction of paragraph V of the proposals which should control in the case of its particular deed and lease.

The whole matter would be complicated by attempting an adjustment in equity rather than by leaving each orator, if he is sued, to make his defence at law.

In *Hale* v. *Allison* 138 U. S. 56, 57, 47 L. ed. 380, 23 Sup. Ct. 244, the Supreme Court of the United States, speaking by Mr. Justice Peckham, points out that the assumption of jurisdiction to prevent a multiplicity of suits might in some cases do so as matter of form rather than of substance, while leading to inconvenience which would constitute good ground for denying the jurisdiction. Mr. Pomeroy, the editor, cites this case and also *Thompson* v. *Craig,* 93 Fed. 885, *Van Auken* v. *Dammeier,* 27 Ore. 150, 40 Pac. 89, and other cases some of which are much in point here.

In arguing that chaos might result from separate actions by the defendant against the various mill owners in case of the success of the defendant, the orators give some very good reasons why there would still be greater chaos if there should be an attempt to adjust matters in a single suit in equity at the instance of the orators. They point out that the relative values of the water rights and property interest of the respective orators may and must change from year to year. This being so an apportionment in equity which would be just in one year would be unfair and unjust in another year, and the orators do not suggest any way in which such injustice could be prevented in a single suit in equity, and none occurs to us except the keeping forever of the case in the court of chancery for new proceedings from time to time as changed conditions and valuations might require. Such a course is not to be thought of seriously. As to the matter of apportionment, on the theory that the orators' main claim is wrong, see *Citizens Bank* v. *Fitchburg Fire Ins. Co.,* 86 Vt. 267, 84 Atl. 970, and *Mechanics Ins. Co.* v. *Hoover &c. Co.,* 173 Fed. 888, 97 C. C. A. 400, 32 L. R. A. (N. S.) 940, and note.

If the defendant should carry out its alleged threats and bring suits at law against all of the orators separately for money paid by it on account of taxes assessed against it in New Hampshire, the court having jurisdiction of the cases would be likely to try one of them in the first instance and to continue the other to await the determination of such questions

as would be in fact common to all the suits; and such a course would have a directness and simplicity not attainable by proceedings under this bill and would have the merit of leaving to courts of law questions that primarily belong there. *Fellows* v. *Spaulding et al.,* 141 Mass. 92, 6 N. E. 548; Pom. Eq. Juris. 3rd ed. §251¾ and note b.

The case made up by the bill demurred to in *Cloyes* v. *Middlebury Electric Company,* 80 Vt. 109, 66 Atl. 1039, 11 L. R. A. (N. S.) 693, was very different from this. Each of the eighty-eight orators there suffered a common injury of such a character that he alone was entitled to redress in equity, and as it appeared from the allegations that the cause of the complaint was common to all, that any defence against one claim would be available against all the claims, and that the. testimony, proof, and decrees would be alike, except as to the amount of damages, it was held that the eighty-eight persons entitled each to his remedy in equity could join in one bill upon the ground of preventing a multiplicity of suits.

The jurisdiction of the court of chancery in proper cases is stoutly maintained in this State as is shown by the above case and by *Brown & Co.* v. *Ware,* 87 Vt. 121, 88 Atl. 507, where it is held that the statutory liability of directors of a corporation assenting to the creation of an unauthorized indebtedness should be enforced in equity.

The rules applied in the above cases are entirely sound and salutary, but are no authority for the contention of the orators in the case before us.

Besides, the main gist of this complaint is that the orators would save the single defendant from a multiplicity of suits which he does not ask to be saved from, and such a ground of equitable jurisdiction is not looked upon with favor. *Equitable &c. Co.* v. *Brown,* 213 U. S. 25, 51, 53 L. ed. 632,. 29 Sup. Ct. 404, 413.

In the case last cited, in repelling the claim of equitable jurisdiction to prevent a multiplicity of suits the Supreme Court say among other things: ''The defendant is not in court asking it to take jurisdiction of its suits against others in order to prevent a multiplicity of suits against it or by it.''

Among the papers printed and furnished us are a supplemental bill, and an answer thereto incorporating a demurrer. The supplemental bill deals with the matter of an appeal taken

by the defendant from a tax assessment in the town of Walpole for the year 1912. The defendant says briefly that that appeal has been dismissed, and its brief deals solely with the demurrer to the original bill.

The orators say that the supplemental bill was maintainable as a bill of injunction and gave our court of chancery jurisdiction of this whole controversy, whether otherwise chancery would have jurisdiction or not; and that that jurisdiction has not been divested by any happening which may have taken the supplemental bill out of the controversy.

What is alleged by the defendant as to the matter of the supplemental bill is thus impliedly admitted by the orators; and the decretal order appealed from takes no notice of the supplemental bill.

Although in a sense a supplemental bill is merely an addition to or a continuation of the original bill, it is the practice in this State, when a case is heard or brought on for hearing upon a bill and a supplemental bill, for the decretal order to say so, and so from the language of the order appealed from here we infer that the matter of the supplemental bill was not brought before the chancellor.

But however this may be, a supplemental bill is a different thing from an amended bill merely, *Blondin* v. *McArthur,* 84 Vt. 516, 80 Atl. 663, and if an orator has no case in equity when he brings his original bill, he cannot make one by a supplemental bill setting up a new cause of action. *Nichols* v. *Rogers,* 139 Mass. 146, 29 N. E. 377; *Mellor* v. *Smither,* 114 Fed. 116, 120, 52 C. C. A. 64, 1 Beach Mod. Eq. Prac. §496; *Jenkins* v. *International Bank,* 127 U. S. 484, 32 L. ed. 189, 8 Sup. Ct. 1196; *Scheerer* v. *Agee,* 113 Ala. 383, 21 So. 81.

Moreover, as the orators themselves say: "Though the pleadings disclose litigation in New Hampshire undertaking to involve the parties here, yet a careful consideration will show that the New Hampshire jurisdiction has one function to perfrom and the Vermont jurisdiction another and entirely different one." That is, New Hampshire is concerned to know what property is taxable there. The Vermont courts may properly deal with the question, upon whom shall the burden of taxes assessed on the property in question wherever situated ultimately fall? See *Bellows Canal Co.* v. *Rockingham,* 37 Vt. 622. With the boundary line between the two states in dispute, see Acts of

1912, Nos. 453 and 454, it becomes the courts of both jurisdictions to act with a delicate regard to the principle of comity between states.

The orators argue at some length the power of the court of chancery to restrain persons within this jurisdiction from going into another state to litigate matters cognizable here. We do not question the power, nor the wisdom of its exercise in proper cases, but the bill here does not allege that the defendant is threatening to go into New Hampshire to litigate questions between the parties to this case.

The orators further say in their brief that without reference to any specific division of equity discussed by it, the situation presented is one which cannot adequately be dealt with at law, and that so the jurisdiction of the court of chancery should be maintained. But the reasons for drawing litigation into the court of chancery should be clearly pointed out and understood. With respect to this claim the orators speak of the jurisdiction of a court of equity as ''rather inchoate.'' But we do not think that this can reasonably be said of that jurisdiction now or since the time of Charles II and Lord Chancellor Nottingham. 1 Spence, Eq. Juris. 715, 716; 1 Pom. Eq. Juris. §57. Since that time the principles governing equitable jurisdiction, except as modified by the law-making power, have remained fairly stable though not ''ossified,'' for changing conditions have required and always will require new applications of both equitable and legal principles. Selden in his Dissertation upon Fleta, pp. 7, 8; Sr. Thomas Raymond in *Rowe* v. *Clarges, T. Raymond,* 482, 483; Lord Mansfield in *Barwell* v. *Brooks,* 3 Doug. 371; Nathaniel Chipman in Reports & Dissertations, pp. 128, 129; Lord St. Leonards in *Egerton* v. *Brownlow,* 4 H. L. C. 11, 232; Mr. Justice Matthews in *Hurtado* v. *California,* 110 U. S. 516, 530, 28 L. ed. 232, 4 Sup. Ct. 111, 292.

The bill does not disclose any ground on which the court of chancery should interfere to prevent the defendant from bringing a suit, or, if he is thereto advised, various suits at law.

*The pro forma decree is reversed and the cause remanded with mandate that the bill be dismissed unless further proceedings in the court of chancery are there petitioned for and permitted conformably to section 1317 of the Public Statutes.*