AMERICAN STEEL & IRON CO. *v.* CHARLES TAFT ET AL.

February Term, 1938.

Present:   POWERS, C. J., SLACK, MOULTON, SHERBURNE and BUTTLES, JJ.

Opinion filed May 6, 1938.

470

*Frank E. Barber, Ernest W. Gibson, Jr.,* and *F. Elliott Barber, Jr.,* for the defendants.

*Neil D. Clawson* and *Harold E. Whitney* for the plaintiff.

SHERBURNE, J.   The plaintiff has purchased from the State of Vermont, the owner of the West River Railroad, the rails, rail accessories and ties on the greater part of the length of the railroad, and seeks to enjoin the defendants, separate owners of lands through which the railroad passes, from interfering with the removal of such rails, accessories and ties.   The bill alleges that some of the defendants have notified the plaintiff that they claim that the right of way and materials upon their lands belong to them, and that they have forbidden the plaintiff from entering upon the railroad right of way to remove the rails and materials; that all of the defendants have erected signs forbidding the removal of any material from the right of way; that some of the defendants have threatened to do violence to the employees, agents and servants of the plaintiff if they enter their lands to remove such property; that some have placed barriers and obstructions upon the right of way; and that one defendant has removed certain of such rails outside of the right of way. No concerted action upon the part of the defendants is charged. The bill also alleges that the State of Vermont has not abandoned the rights of way or easements which it acquired from the West River Railroad Company, and has never abandoned the rails and other chattels thereof.   The defendants jointly and severally demurred to the bill of complaint.   In the final decree the demurrer was overruled, the bill adjudged sufficient, and the temporary injunction made permanent, from which the defendants have appealed.

The principal ground of demurrer argued here is that there is no equity in the complaint because the plaintiff has a full,

adequate and complete remedy at law. This necessitates a determination as to whether the property in question is such that the plaintiff has an adequate remedy in replevin or trover.

We agree with the defendants that the tracks, railroad structures and other railroad equipment do not become a part of the realty and may be removed by the railroad company or its assigns on abandonment of the right of way, or within a reasonable time thereafter. *Jones* v. *Southern R. R. Co.* (5th Cir.), 285 Fed. 19; *Northern Central R. R. Co.* v. *Canton Co.*, 30 Md. 347; *Wagner* v. *Cleveland & T. R. R. Co.*, 22 Ohio St. 563, 10 A. R. 770; *Hatton* v. *Kansas City, etc., R. R. Co.*, 253 Mo. 660, 162 S. W. 227; *Talley* v. *Drumheller*, 143 Va. 439, 130 S. E. 385, 388. See, also, *Farrar* v. *Nashville, C. & St. L. Ry.*, 162 Tenn. 313, 36 S. W. (2d) 95; *St. Louis, K. & S. R. R. Co.* v. *Nyce*, 61 Kan. 394, 59 Pac. 1040, 48 L. R. A. 241; *Wiggins Ferry Co.* v. *Ohio & Miss. R. R. Co.*, 142 U. S. 396, 35 L. ed. 1055, 12 Sup. Ct. 188; *St. Johnsbury & Lake Champlain R. R. Co.* v. *Willard*, 61 Vt. 134, 17 Atl. 38, 21 L. R. A. 528, 15 A. S. R. 886. In this last case the railroad company, instead of exercising its right of condemning the land for its road, entered upon it by the consent of the mortgagor in possession, the mortgage then being overdue, and constructed its road, but never acquired title nor paid for the land damages, nor made any agreement in respect thereto, and after it had operated its road for more than fifteen years without objection, for the first time instituted proceedings to have the land condemned. It was held that the defendant, who had purchased and foreclosed the mortgage against the mortgagor and the railroad, and who, after his decree had become absolute, claimed that it gave him title to the corpus of the railroad itself, was not entitled to the improvements and could not have their value as damages, and that in the circumstances the maxim *quicquid plantatur solo, solo cedit*, did not apply.

All of the above cases, either directly or by inference, treat lawfully erected railroad superstructures as chattels. In several they are said to be trade fixtures or in the nature of trade fixtures. In *Snow* v. *Smith*, 86 Vt. 58, 83 Atl. 269, 270, we had occasion to define trade fixtures, and cited *Wagner* v. *Cleveland & T. R. R. Co., supra*, to the effect: "That the general principle involved in a determination of such questions, is the

distinction between the business which is carried on in or upon the premises and the premises themselves. That the former is personal in its nature, and articles that are merely accessory to the business and have been put upon the premises for this purpose, retain the personal character of the principal, to which they are subservient. But articles which have been annexed to the premises as accessory to the land, without regard to the business there carried on, become subservient to the realty and acquire its character.''

The ordinary trade fixture may serve a useful purpose as an appurtenance to the land upon which it is built, but that portion of this railroad located upon the land of any one of these defendants, disconnected from other parts of the road, cannot be operated and will be useless as a railroad, nor can it serve any useful purpose as an appurtenance except for its ''junk'' value.

Under the allegations of the bill we have no hesitation in holding that as between the parties the rails, etc., sought to be removed are chattels, and, with regard to the right of removal, we approve the position taken in *Talley* v. *Drumheller, supra,* where it is stated: ''The defendant was not bound to remove the rails within any specified time. So long as no claim of title to them was made by the plaintiffs, no objection raised to their remaining upon the right of way, no notice given to remove them, and no act done by the plaintiffs which would bring home to the defendant notice that the plaintiffs intended to assert ownership over them, the defendant had the right to assume that the status quo of the rails remained unchanged.'' Reverse the parties and we may have the situation here. It must be recognized that railroad superstructures cannot be removed until the railroad ceases operations as such, and that as a practical matter these superstructures may not be conveniently removed and disposed of at all times. Yet, if the owner of the reversion demands the removal of such superstructures, the railroad must remove them in a reasonable time thereafter.

As the rails, etc., are chattels, the plaintiff can resort to replevin or trover and cannot resort to equity if either of these remedies is as practical and as efficient to the ends of justice as the remedy in equity. *Heath* v. *Capital Savings Bank & Tr. Co.,* 79 Vt. 301, 64 Atl. 1127; *Bourke* v. *Olcott Water Co.,* 84 Vt. 121, 124, 78 Atl. 715, 33 L. R. A. (N. S.) 1015, Ann. Cas.

1912D, 108; *Quinn* v. *Valiquette*, 80 Vt. 434, 447, 68 Atl. 515, 14 L. R. A. (N. S.) 962; *Town of West Rutland* v. *Rutland Ry. L. & P. Co.*, 98 Vt. 379, 382, 127 Atl. 883.

If there were only one party defendant we should be disposed to hold that the remedies at law are adequate. Replevin was used in *Northern Central R. R. Co.* v. *Canton Co.*, *supra*. As said by Judge Isaac F. Redfield in *Preston* v. *Briggs*, 16 Vt. 124, a case where the defendant was sued for removing a barn from land of the plaintiff: "I take it for granted that if the defendant could not have maintained trover for this building, it will hardly be contended he can justify entering and removing it from the plaintiff's freehold. The law will always give a party redress by action, where it will justify a forcible entry upon lands, or forcible recaption of personal property for that purpose."

But here we have five defendants, all similarly situated, where there is only an issue of law involved which is determinative of the rights of all the parties. Under such circumstances we think that a separate suit at law against each defendant affords the plaintiff an inadequate remedy, as well as putting the State to the expense of affording the plaintiff five separate trials where one determination is adequate.

We said in *Town of Sharon* v. *Anahama Realty Corp.*, 97 Vt. 336, 340, 123 Atl. 192, 193, that "it is well established that in chancery, one who has a common right against several persons, the establishment of which would otherwise require a separate suit against each, may join such persons in one suit. In such cases the defendants are not joint tort-feasors at all in the common-law sense of the term, but their joinder is permitted to avoid a multiplicity of suits. The bill in such a case is analogous to or in the nature of a bill to quiet title or a bill of peace, and the community of interest of the defendants is in the law and facts involved, only."

See, also, *Town of Manchester* v. *Town of Townshend*, 109 Vt. 65, 69, 192 Atl. 22, 110 A. L. R. 811.

Professor Pomeroy in his Equity Jurisprudence, 4th ed., sec. 245, reduces all possible conditions in which a multiplicity of suits can arise to four classes. His fourth class is: "Where the same party, A, has or claims to have some common right against a number of persons, the establishment of which would

regularly require a separate action brought by him against each of these persons, or brought by each of them against him, and instead thereof he might procure the whole to be determined in one suit brought by himself against all the adverse claimants as co-defendants.'' In discussing the cases which properly fall within this and his third class he says (section 269a) that ''the weight of authority is simply overwhelming that the jurisdiction may and should be exercised, either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no 'common title,' nor 'community of right' or of 'interest in the subject-matter,' among these individuals, but where there is and because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body.''

This text is commented upon favorably in *Hale* v. *Allinson,* 188 U. S. 56, 47 L. ed. 380, 23 Sup. Ct. 244, 252; in *Rogers* v. *Boston Club,* 205 Mass. 261, 91 N. E. 321, 28 L. R. A. (N. S.) 743; and in *Wilkinson* v. *Heberling,* 231 Ill. App. 516. On the other hand, as said in *Hale* v. *Allinson,* and quoted in the other two cases: ''The single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction, is not in all cases enough to sustain it. It might be that the exercise of equitable jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless be attended with more and deeper inconveniences to the defendants than would be compensated for by the convenience of a single plaintiff; and where the case is not covered by any controlling precedent the inconvenience might constitute good ground for denying jurisdiction.'' In this connection in *International Paper Co.* v. *Bellows Falls Canal Co.,* 88 Vt. 93, 102, 90 Atl. 943, 946, we quoted from section 251½ of Pom. Eq. Jur., where it is said: ''The equity suit must result in a simplification or consolidation of the issues; if, after the numerous parties are joined, there still remain separate issues to be tried between each of them and the single defendant or plaintiff, nothing has been gained by the court of equity's assuming jurisdiction. In such a case, 'while the bill has only one number upon the docket and calls itself

a single proceeding it is in reality a bundle of separate suits, each of which is no doubt similar in character to the others.' ''

Professor Chafee, in "Bills of Peace with Multiple Parties," 45 Harvard Law Review, 1297, is equally strong for this sort of equity jurisdiction although he thinks that Professor Pomeroy has overstated his authorities. Both have reviewed numerous cases supporting their respective positions.

In *Cloyes* v. *Middlebury Electric Co.*, 80 Vt. 109, 117 *et seq.*, 66 Atl. 1039, 11 L. R. A. (N. S.) 693, we had occasion to go into this subject somewhat, but that case was one of equitable cognizance irrespective of the number of the parties. For the purposes of the instant case we need not now adopt the broad view that multiplicity alone in every instance is a reason for getting into equity nor need we further review the cases. Here the facts are not in dispute and the basic issues involve questions of law only, which would have to be decided by the presiding judge in separate jury suits if tried at law. We see no reason why these questions of law may not be decided as well by an equity judge in one suit.

*Decree affirmed.*