## MARY E. LODGE *vs.* OTIS E. WELD.

Suffolk. Jan. 28. — June 23, 1885. DEVENS, W. ALLEN, & COLBURN, JJ.,
absent.

Upon the retirement of a member of a partnership, whose name formed a part of
the name under which the firm did business, he consented that the remaining
partners should have the right to use the same name "under which to trade in
future." *Held,* that this did not amount to a consent, within the Pub. Sts. *c.* 76,
§ 6, that a person, who afterwards became a member of the firm, might use the
same name on his becoming the sole member.

The fact that an order for goods is sent to a firm, addressed by the name under
which it is doing business, does not amount to the consent required by the Pub.
Sts. *c.* 76, § 6.

If a member of a firm is appointed executor of a deceased partner, his consent,
in his personal capacity, that the name of the deceased partner may be used
by the successors in business of the firm, is not sufficient, within the Pub. Sts.
*c.* 76, § 6.

A child of a deceased member of a partnership is not a "legal representative,"
within the meaning of the Pub. Sts. *c.* 76, § 6, whose consent in writing is re-
quired to authorize the use of such deceased member's name by his successor
in business; and such child cannot maintain a bill in equity to restrain the
unauthorized use of his father's name in the business.

BILL IN EQUITY, filed April 21, 1883, by the only surviving
child of John D. Williams, deceased, to restrain the defendant,
doing business under the name and style of John D. & M. Wil-
liams, from the further use in his said business of the name of
John D. Williams. Hearing before *Devens,* J., who reported
for the consideration of the full court the following case:

The firm of John D. & M. Williams was formed in 1812, and
consisted of John D. Williams and Moses Williams, his brother;
and they continued the business under the firm name until April
5, 1831, when David W. Williams, a son of John D. Williams,
was taken into the firm as a member thereof.

On November 4, 1836, John D. Williams retired from said
firm, and by an instrument under his hand and seal, bearing that
date, relinquished "to the said Moses Williams and David W.
Williams all his interest of every kind to all the property of
every name and nature which the said John D., Moses, and
David W. hold as copartners under the style and firm of John
D. & M. Williams, and also the full right to use the same style
of John D. & M. Williams under which to trade in future."

On January 22, 1849, David W. Williams, so far as he acquired any rights to the firm name under the preceding instrument, by an instrument in writing transferred the same to said Moses Williams, his copartner, and retired from the firm.

John D. Williams died on August 28, 1848, and Moses Williams was appointed the sole executor of his will, gave bond as such executor, and assumed and fully discharged the trusts, duly rendering his final account as such executor to the Probate Court, which account was accepted and allowed by said court on April 15, 1861. Neither in said account, nor in any other account down to 1882, when Moses Williams died, had he made any inventory or rendered any account of the interest of John D. Williams in said firm name, or of the value thereof.

On February 1, 1866, Moses Williams — who had, during the whole of the mean time, done business as before under the name of John D. & M. Williams, and who had associated with himself as partners, about the year 1849, Barney Cory, and his two sons Moses B. Williams and Thomas B. Williams — retired and withdrew from said firm, which had up to that time been carrying on business under the old name and style of John D. & M. Williams. Upon thus retiring from business, Moses Williams, by an instrument under his hand and seal, released to Barney Cory, Moses B. Williams, and Thomas B. Williams, "parties of the second part, all his interest in the merchandise and stock of the said firm, and in the debts due to said firm, and in the claims which said firm now has against any person or persons whatsoever, except those mentioned in the schedule hereto annexed. The said Moses Williams also consents, so far as he has the legal right, that the said parties of the second part may use for any firm of which they may become members the name of John D. & M. Williams." This instrument was signed by Moses Williams, Barney Cory, Moses B. Williams, and Thomas B. Williams.

By an instrument of the same date as the above, Barney Cory, Moses B. Williams, and Thomas B. Williams formed a copartnership with the defendant, who is a grand-nephew of John D. and of Moses Williams, under the firm name and style of John D. & M. Williams; and Moses Williams sent notices to two persons who had had business with the firm, stating that he had

retired from the firm, that Otis E. Weld had become a partner, and that the latter would, with the other partners, carry on the business "under the old name and style of John D. & M. Williams." The retirement of Moses Williams from said firm was published in four Boston papers several times about that date. The plaintiff about this time took a morning newspaper, which she testified she believed was the Boston Post, one of the papers in which said retirement was published. She then lived in a house next to that of Barney Cory; and she was in the habit of going to see Moses Williams twice a year, — when she went out of town, and when she came home. Moses Williams, during his lifetime, was a prominent citizen of Boston, and was well known in the business community.

The plaintiff testified that she was, in fact, unaware that Moses Williams had withdrawn from business and retired from said firm; and that, until the time of his death, September 12, 1882, she supposed he was still a member thereof.

After his retirement from said business, in 1866, Moses Williams, down to the year preceding his death, when he became confined to his house by sickness, continued to use the same desk in the store which he had previously occupied, and was frequently seen there by the husband of the plaintiff, whom he used to consult about wines, as he had done for many years, and who repeatedly informed his wife, the plaintiff, of having thus met Moses Williams at said store.

After February 1, 1866, Barney Cory, Moses B. Williams, Thomas B. Williams, and the defendant carried on said business, under the firm name and style of John D. & M. Williams, until October 9, 1866, when Moses B. Williams died; and thereafter the survivors carried on said business, under said name and style, until June 3, 1878, when Thomas B. Williams died; and thereafter the survivors carried on the same business, under the same name and style, until August 18, 1882, when Barney Cory died, leaving the defendant the sole survivor, who has ever since, as sole proprietor, carried on said business, and claims the right so to do, under the firm name and style of John D. & M. Williams.

The defendant, at the time of the hearing, had not settled the affairs of his copartnership with Barney Cory; but a large sum

of money still remained due from him, as surviving partner, to Cory's administrators.

As soon as the defendant became a partner, on February 1, 1866, the names of the partners, namely, Barney Cory, Moses B. Williams, Thomas B. Williams, and Otis E. Weld, were painted upon the front of the store occupied by the defendant and his copartners, and these names remained so until about January 1, 1867. It appeared that the husband of the plaintiff was at the store very frequently during this period, but he testified that he did not remember seeing the defendant's name painted on said sign as a member of the firm.

Moses Williams, after his retirement from the firm in 1866, and prior to his death in 1882, made several checks payable to the order of John D. & M. Williams, and also wrote to said firm two letters, dated July 9, 1877, and April 15, 1878, addressed to Messrs. John D. & M. Williams.

It was not contended that the defendant had any right to the use of the name of J. D. Williams or John D. Williams in his said business, either alone or in connection with the name of M. Williams, except as the same may be derived from the written instruments and facts herein referred to.

On or about November 26, 1878, the plaintiff had, upon one occasion, sent by messenger to the store where Barney Cory and the defendant were then doing business under the name of John D. & M. Williams, a written order for some cooking wine, addressed to Messrs. Williams; and, upon another occasion, there had come into the possession of the firm a torn tag, which had apparently been tied to a demijohn, and bore upon its face the name of the plaintiff in her own handwriting, and immediately above her name, in the handwriting of some other person, the words "J. D. & M. Williams;" but when these words were written upon the tag, and by whom, did not appear.

The plaintiff testified that she did not, prior to said Moses Williams's death, know that he had ceased to be a member of said firm. Considering the publicity given to the notice of dissolution, and the foregoing facts proved, the judge declined to find that she had no such knowledge, although he stated that he was not prepared to find otherwise, and did not find it to be shown that she actually had this knowledge.

The plaintiff is the only surviving child of John D. Williams; but there are still living issue of other deceased children, being grandchildren and great-grandchildren of John D. Williams, to the number of more than forty persons, many of them bearing the name of Williams, and one of them the name of John D. Williams. It was not contended that the defendant had received the written consent of the plaintiff, unless said order and tag were intended as such consent.

It was admitted that, at the time of the filing of the bill, there was no executor, administrator _de bonis non_ with the will annexed, or other probate representative of John D. Williams; and that there never had been any except Moses Williams.

_W. Gaston & C. L. B. Whitney_, for the plaintiff.

_E. R. Hoar & M. Williams_, for the defendant.

C. ALLEN, J. There was no consent in writing of John D. Williams, or of his legal representatives, to the continued use of his name in the firm by the defendant. The only consent in writing which he gave personally was to Moses Williams and David W. Williams. Nobody assuming to represent him has given any such written consent to the defendant. It would be a strained construction to hold that the note of the plaintiff to the Messrs. Williams, ordering some cooking wine, carried with it a consent sufficient to satisfy the statute. Moses Williams, the executor of John D. Williams, never gave a written consent in his representative capacity, although his letters may fairly be held to show his personal consent that the defendant might use the name of John D. Williams in the firm.

It is to be assumed, therefore, that the use by the defendant of the name of John D. Williams in his business is within the prohibition of the Pub. Sts. _c._ 76, § 6.* The question remains, whether the plaintiff can maintain a bill in her own name to restrain such use.

---

* This section is as follows :

" No person carrying on business in this Commonwealth shall assume or continue to use in his business the name of a person formerly connected with him in partnership or the name of any other person, either alone or in connection with his own or with any other name or designation, without the consent in writing of such person or of his legal representatives."

It is a natural inference from the phraseology of the statute, that the persons whose consent in writing is required in order to justify the use of the name would be the only persons entitled to remedy the wrong, if committed. And so it has been considered heretofore. Bills in equity for this purpose have always been brought, so far as appears in the reports, in the name of the person himself whose name was used without authority, or of his executor or administrator. *Bowman* v. *Floyd*, 3 Allen, 76. *Morse* v. *Hall*, 109 Mass. 409. *Hallett* v. *Cumston*, 110 Mass. 29. See also *Rogers* v. *Taintor*, 97 Mass. 291. But, in the present case, the estate of John D. Williams has been settled, and there is no executor or administrator living, and the plaintiff, being his daughter, seeks to enforce the remedy, and contends that, under the circumstances, she is to be deemed a legal representative, within the meaning of the statute.

There can be no doubt that the ordinary meaning of the term " legal representatives " is executors and administrators. *Cox* v. *Curwen*, 118 Mass. 198. *Price* v. *Strange*, 6 Madd. 159. In wills, the term may mean whatever the testator intended; but, if the meaning is not controlled by the context, it means executors or administrators. 2 Wms. Exrs. (6th Am. ed.) 1216–1220. In the construction of statutes, technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, are to be construed and understood according to such peculiar and appropriate meaning, unless such construction would be inconsistent with the manifest intent of the General Court, or repugnant to the context of the same statute. Pub. Sts. *c.* 3, § 3, *cl.* 3. Accordingly, in a particular statute, this term was held to include heirs. *Johnson* v. *Ames*, 11 Pick. 173, 180. Looking at the legislation now before us for construction, nothing is found to change the ordinary meaning of the term. The enactment was first passed in 1853 (St. 1853, *c.* 156); and was continued in the Gen. Sts. *c.* 56, §§ 3, 4; and is now found in the Pub. Sts. *c.* 76, §§ 6, 7.

The circumstance that there may come a time when there is no legal representative of a person deceased, and can be none for want of legal authority to appoint an administrator *de bonis non*, is not decisive to control the ordinary meaning of the words. But for the statute, clearly the plaintiff would have

no right to maintain the bill. The only question is, whether she is within its meaning. If the statute does not go far enough to give to her this right, that is a matter for the consideration of the Legislature, and not for us. The right is conferred only upon the legal representatives. The statute looks rather to the matter of property, and seeks to enable a profitable disposition to be made of partnership assets, to enable the executor or administrator to sell the good will and the right to use the partnership name, and to give effect to such sale by securing the purchaser in the use of it. If it had been intended to go further, it is reasonable to suppose that the Legislature would have used appropriate language to show that meaning. A powerful argument has been addressed to us, in behalf of the plaintiff, that peculiar circumstances may exist, making it proper for a child to vindicate the memory of a parent by restraining the use of his name by successors who have departed from his methods of business, and who may thereby bring discredit upon his name. This, however, is for the Legislature. The existing statutes, as it seems to us, are not broad enough for that purpose.

Some confirmation of this view is derived from taking into account the state of the law, as it existed independently of these statutes. Ordinarily, an assignment of the good will and business of a firm includes the exclusive right to use the name of the firm. *Levy* v. *Walker*, 10 Ch. D. 436. *Hall* v. *Barrows*, 4 De G., J. & S. 150. *Churton* v. *Douglas*, H. R. V. Johns. 174. 2 Lindley on Part. (4th ed.) 861, 862. This right is regarded as property. The statute, in putting a limitation upon the rights to be acquired after its enactment by a mere succession in business, and in prohibiting an unauthorized use of another person's name, would naturally confine the remedy to those representing the property rights of such person.

It was further contended, on behalf of the defendant, that he had a vested right, by succession, to the use of the firm name of John D. & M. Williams, under the assignment executed by John D. Williams prior to the enactment of the St. of 1853, and also that the plaintiff's right, if any, would be barred by laches. But being of the opinion, for the reasons above stated, that the plaintiff's bill cannot be maintained, we do not enter upon the consideration of these further objections.      *Bill dismissed.*