DUDLEY L. PAGE & another *vs.* THE PAGE & SHAW
CHOCOLATE COMPANY & others.

Suffolk.   December 5, 1921. — March 2, 1922.

Present: RUGG, C. J., BRALEY, DE COURCY, CARROLL, & JENNEY, JJ.

*Name. Trade Name. Equity Jurisdiction,* To enjoin unlawful use of name.
*Equity Pleading and Practice,* Bill, Parties.

Two partners, engaged in the manufacture and sale of fine candies under a firm
name composed of their surnames joined by " &," made an agreement dissolv-
ing the partnership, conveying to one of them, "his heirs, executors, adminis-
trators, and assigns," the assets of the business including the good will and
the "right to use the" firm name as above described "as the trade name or
trade-mark in the business of the manufacture or sale of candy," and providing
that the purchasing partner should "incorporate his business of manufacturing
candy and confectionery" and give to the retiring partner certain shares of
stock and pay him an annuity.   The purchasing partner organized a corpo-
ration under a name, which was the former firm name with the word "Incor-
porated" added, for the purpose, as stated in its charter, of engaging in and
carrying on "the business of manufacturing and selling candy and confectionery
at wholesale and retail," and conveyed to it the assets formerly of the firm "to-
gether with the good-will, trade-marks, trade names, and copyrights belonging to
or appertaining to said business."   A third party, having secured control of the
corporation and of its officers, organized a second corporation for the purpose of
the manufacture and sale of chocolate and cocoa in various forms, the manu-
facture and sale of candy and confectionery not being included in the stated
corporate purpose.   The name of the new corporation was composed of the old
firm name preceded by "The" and followed by the words "Chocolate Company."
By his control of both corporations the third party then undertook to convey to
the second corporation the right to use the old firm name, transferring to the first
corporation a valuable consideration for such right.   The permission of the origi-
nal partners to such use of their names not having been procured, they joined
as individuals in a bill in equity seeking either an accounting or an injunction
against the use of their names.   Upon demurrer to the bill, it was *held,* that

(1) *It was doubtful* whether the original agreement of dissolution between
the partners authorized the use of the former firm name by any other than
the contemplated original corporation;

(2) That agreement did not authorize the first corporation to transfer the
use of that name to the second corporation, organized to carry on a different
business;

(3) The plaintiffs had a joint and concurrent interest entitling them to join
in the seeking of relief;

(4) The third party, who controlled both corporations, was not improperly
joined as a defendant;

(5) The bill was not multifarious;

(6) *Whether* the plaintiffs were entitled to damages or profits, it was not necessary to determine upon the demurrer;

(7) The provisions of G. L. c. 110, § 7, entitled the plaintiffs to relief by injunction.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on January 21, 1921, and afterwards amended, by Dudley L. Page and Charles N. Shaw against the corporation, The Page & Shaw Chocolate Company, the corporation, Page & Shaw, Incorporated, and Otis E. Dunham.

The allegations of the bill as amended in substance were as follows:

For over twenty years previous to the year 1912 the plaintiffs were copartners doing business under the firm name of Page & Shaw, and were engaged during all that period in the manufacture and sale of fine candies in Boston and elsewhere. The firm had become well and favorably known, and the name of Page & Shaw had acquired great value as a trade name and trademark.

In the early part of the year 1912 the firm was dissolved by mutual consent of the partners and a written agreement of dissolution was entered into, dated March 11, 1912, set out below. The plaintiff Shaw early in the year 1912 caused to be organized under the general laws of Massachusetts the defendant corporation Page & Shaw, Incorporated, to engage in and carry on the business of manufacturing and selling candy and confectionery at wholesale and retail, and became the holder of the greater part of the stock of said company; and by an agreement in writing dated April 30, 1912, set out below, he undertook to convey to that corporation, with certain reservations not now material, "the wholesale business heretofore conducted by Charles N. Shaw individually and by Dudley L. Page and Charles N. Shaw under the firm name of Page & Shaw for the manufacture of candy and confectionery, and except as hereinafter limited, the exclusive right to manufacture and to sell at wholesale and at retail the so-called Page & Shaw candy and confectionery, and to establish retail stores or agencies, or both, for the sale of such candy and confectionery, together with the goodwill, trademarks, trade names, and copyrights belonging to or appertaining to said business." No right was conveyed to the said Page & Shaw,

Incorporated, by that or by any agreement to use the trade name Page & Shaw, except in the manufacture and sale by itself of candy and confectionery.

In or previous to November, 1918, the defendant Dunham became the owner of all or substantially all of the common stock of Page & Shaw, Incorporated, and became the president and general manager of that corporation; and early in 1919 Page & Shaw, Incorporated, and Dunham, acting together, promoted the organization of a new corporation, the defendant The Page & Shaw Chocolate Company. The principal business which the company was authorized to engage in, as shown by its agreement of association, was the manufacture and sale of chocolate and cocoa in various forms. The manufacture and sale of candy and confectionery was not included in its purposes.

On February 20, 1920, the directors of The Page & Shaw Chocolate Company, including the defendant Dunham, held a meeting and voted to issue three thousand five hundred shares of the preferred stock of the company of the par value of $100 each and four thousand nine hundred and ninety seven shares of the common stock also of the par value of $100 each. The directors further voted to purchase from Page & Shaw, Incorporated, the right to use the name Page & Shaw, to be used as a part of the corporate name of The Page & Shaw Chocolate Company, and also to purchase from Page & Shaw, Incorporated, the good will attaching to the name Page & Shaw and to issue to Page & Shaw, Incorporated, in payment therefor common stock of The Page & Shaw Chocolate Company of the par value of $250,000, and to issue to Page & Shaw, Incorporated, other shares of the common stock of The Page & Shaw Chocolate Company of the par value of $249,700 in payment for a contract by Page & Shaw, Incorporated, to purchase the entire output of The Page & Shaw Chocolate Company upon certain terms agreed upon. All of the defendants well knew that the names Page and Shaw which they were using or about to use were the names of the plaintiffs respectively. The property received by the defendant Page & Shaw, Incorporated, for the use of the name Page & Shaw as aforesaid and for the good will attaching to it was of great value. On February 26, 1920, stock of The Page & Shaw Chocolate Company was issued pursuant to the

votes, and Page & Shaw, Incorporated, now holds a considerable part of the stock so issued. Since the spring of 1920, The Page & Shaw Chocolate Company has been engaged in a large way in manufacturing chocolate of various kinds, cocoa such as is used for drinking, and cocoa butter such as is used in the manufacture of candy. It has sold its entire output to Page & Shaw, Incorporated, pursuant to the contract above mentioned.

The plaintiffs did not know until shortly before the filing of the bill that The Page & Shaw Chocolate Company had been formed or that their names or the name Page & Shaw was being used by a new company, and they never consented either separately or jointly to the use of their names or the use of the name Page & Shaw by The Page & Shaw Chocolate Company as a part of its corporate name or as a trademark or trade name or otherwise.

The plaintiffs alleged that "each and all of the defendants have derived large sums of money or large amounts of property by means of their unlawful use of the plaintiffs' names and goodwill as aforesaid and the plaintiffs have suffered great loss and damage by reason of such unlawful use; and the defendants are liable to account to the plaintiffs for the profits they have received and for the damages sustained by the plaintiffs, if the plaintiffs so elect."

Prayers of the bill were that the defendant Page & Shaw, Incorporated, and the defendant Dunham be ordered to account for what they received from The Page & Shaw Chocolate Company for the right to use the names of the plaintiffs and the good will as aforesaid, and to pay over and deliver the same or the proceeds of the same to the plaintiffs; or that the defendant The Page & Shaw Chocolate Company be permanently enjoined from using in its business or as a part of its corporate name or as a trade name or trademark the names of the plaintiffs or of either of them or the name Page & Shaw; and that it be determined how much the plaintiffs were entitled to as damages "by reason of the unlawful acts aforesaid and how much of the same should be paid by each of the defendants; and also how much the plaintiffs were entitled to by reason of the profits which the defendants or any of them had derived from the unlawful use of the names of the plaintiffs and said good-will, as aforesaid," and "that each

of the defendants be ordered to pay to the plaintiffs the several amounts which the plaintiffs are found entitled to receive as aforesaid."

The dissolution agreement between the plaintiffs was dated March 11, 1912, and, so far as material, provided as follows:

"Whereas said Page and said Shaw have heretofore been associated together in business and otherwise as partners and by the contracts and agreements heretofore executed, and whereas the said Shaw intends to incorporate his said business as wholesale manufacturer of candy, and that, therefore, it is necessary and desirable that the mutual rights and obligations of the said Page and the said Shaw be established and herein definitely set forth.

"Therefore . . .

"(1) The said Dudley L. Page hereby sells, assigns, transfers, and releases to the said Charles N. Shaw, his heirs, executors, administrators, or assigns, any and all right, title, and interest in or unto the lease, stock, fixtures, good-will, or any other appurtenance or accessory connected with or appertaining to the business of 'Page & Shaw', or in the business of Charles N. Shaw in the manufacture and sale of candy and confectionery now conducted by Charles N. Shaw at No. 9 West Street, Boston, or elsewhere; and hereby assigns and conveys to the said Charles N. Shaw, his heirs, executors, administrators, and assigns, the right to use the name 'Page' accompanied by the name 'Shaw' as the trade name or trade-mark in the business of the manufacture or sale of candy.

"(2) The said Dudley L. Page further agrees and contracts that he will not use the name 'Page' alone or in any combination with any other name or names in any manner which will imitate or represent in any way the trade name or trade-mark of Page & Shaw, or the initials of the two names i.e. 'P&S'. The said Dudley L. Page, however, reserves the right to manufacture and sell candy under his own name. . . .

"I. In consideration of the foregoing, the said Charles N. Shaw agrees to incorporate his business of manufacturing candy and confectionery under the laws of the Commonwealth of Massachusetts, and as a part consideration for the assignments and releases of the said Dudley L. Page hereinbefore set forth, agrees to issue in the name of the said Dudley L. Page or in such name

as he, the said Page, shall direct, capital stock of the said Corporation in the sum of $10,000 par value of preferred stock, and in the sum of $10,000 par value of the common stock.

"II. The said Charles N. Shaw further agrees to pay to the said Dudley L. Page as an annuity during the lifetime of the said Dudley L. Page, but no longer, the sum of four thousand dollars, ($4,000) per annum payable in equal quarterly installments; and the said Charles N. Shaw further agrees to secure the payment of this annuity to the said Dudley L. Page by good and sufficient collateral security as may be agreed upon by and between the said Dudley L. Page and the said Charles N. Shaw subsequently, provided, however, that if the said Charles N. Shaw shall die before the said Dudley L. Page, the said annuity shall cease at the death of the said Shaw. . . ."

The conveyance by the plaintiff Shaw to Page & Shaw, Incorporated, was dated April 30, 1912, and, so far as material, purported to convey

"(1) All furniture, fixtures, machinery, accessories, and appliances now installed in the factory at Cambridge, Mass., and all stock in trade in said factory including all supplies for the manufacture of candy or confectionery on hand in said factory on March 26, 1912, and all candy and confectionery manufactured or in the process of manufacture on said date; and all book accounts and accounts receivable due for the sale of candy and confectionery in said factory and unpaid on said date, the said corporation assuming the accounts payable on such date.

"(2) The wholesale business heretofore conducted by Charles N. Shaw individually, and by Dudley L. Page and Charles N. Shaw co-partners under the firm name of Page & Shaw, for the manufacture of candy and confectionery, and except as hereinafter limited, the exclusive right to manufacture and to sell at wholesale and at retail the so-called Page & Shaw candy and confectionery, and to establish retail stores or agencies or both for the sale of such candy and confectionery, together with the goodwill, trade-marks, trade names, and copyrights belonging to or appertaining to said business [here follow certain reservations not material to this decision].'

The defendants demurred to the bill as amended on the following grounds:

"1. The plaintiffs are improperly joined as plaintiffs in this suit.

"2. The causes of action, if any, of the two plaintiffs are improperly joined.

"3. The bill of complaint as amended is multifarious.

"4. The bill of complaint as amended does not state facts entitling the plaintiffs, or either of them, to relief in equity.

"5. The bill of complaint as amended does not state facts entitling the plaintiffs, or either of them, to the relief prayed for.

"6. It does not appear that the plaintiffs, or either of them, are entitled to recover the profits, if any, derived by the defendants, or any or either of them, from the use of the name 'Page & Shaw.'

"7. It does not appear that the plaintiffs, or either of them, have sustained any damages.

"8. It does not appear that either the word 'Page' or the word 'Shaw' has been used by the defendants, or any or either of them, in a manner not authorized by the plaintiffs.

"9. It does not appear that any property received by Page & Shaw, Inc., for any name or for any good-will is affected with a trust in favor of the plaintiffs, or of either of them.

"10. It does not appear that any profits have been derived by the defendants, or by any or either of them, from the use by them, or by any of them, of the name 'Page' or of the name 'Shaw' in a manner not authorized by the plaintiffs.

"11. It appears that the phrase 'Page & Shaw' is a trademark and trade name owned by the defendant Page & Shaw, Inc., and that neither of the plaintiffs is entitled to object to any use thereof, and particularly that neither of the plaintiffs is entitled to object to such use thereof as is alleged in the bill of complaint.

'12. It does not appear that either plaintiff is entitled to relief against the defendant Dunham.''

The demurrer was heard by *Crosby*, J., and by his order an interlocutory decree was entered overruling it, from which the defendants appealed. The single justice, being of opinion that the overruling of the demurrer so affected the merits of the controversy that the matter, before further proceedings, ought to be determined by the full court, reported the case for such determination, the bill to be dismissed if the demurrer was sustained,

and, if it was overruled, the defendants to answer to the amended bill.

The case was submitted on briefs.

*W. H. Dunbar, G. R. Nutter & E. F. McClennen,* for the defendants.

*H. R. Bailey & W. H. Vincent,* for the plaintiffs.

DE COURCY, J. The dominant facts alleged, and to be taken as true for the purpose of the demurrer, are these: Prior to 1912 the plaintiffs were engaged in the manufacture and sale of fine candies, as copartners under the firm name of Page & Shaw. In the dissolution agreement of March 11, 1912, Page released to Shaw his interest in the property and good will of the business, and also "the right to use the name 'Page' accompanied by the name 'Shaw' as the trade name or trade-mark in the business of the manufacture or sale of candy." In accordance with the terms of said agreement, Shaw, early in 1912, caused to be organized a corporation with the name Page & Shaw, Incorporated, to carry on the business of manufacturing and selling candy and confectionery at wholesale and retail; and he became the holder of the greater part of the capital stock of said company. To that corporation Shaw transferred the assets of the former partnership, with certain reservations.

In November, 1918, the defendant Otis E. Dunham acquired substantially all the capital stock of Page & Shaw, Incorporated, and became its president and general manager. Early in 1919, these two defendants, acting together, organized a new corporation with the name The Page & Shaw Chocolate Company, for carrying on the business of the manufacture and sale of chocolate and cocoa in various forms. On February 20, 1920, the chocolate company, by its directors, undertook to purchase from Page & Shaw, Incorporated, the right to use "Page & Shaw" as part of the corporate name of the new company, together with the good will attaching thereto, giving shares of the capital stock of the chocolate company as consideration therefor. The plaintiffs seek by this bill in equity, among other things, to enjoin the new corporation from using in its business or as a trade name or trade-mark the names of either of them or the name Page & Shaw.

It is provided by G. L. c. 110, § 4: "A person who conducts business in the Commonwealth shall not assume or continue to

use in his business . . . the name of any other person, either alone or in connection with his own or with any other name or designation, without the consent in writing of such person or of his legal representatives." As matter of construction it is doubtful, to say the least, whether the dissolution agreement between Page and Shaw authorized the use of the name "Page & Shaw" by any other than the contemplated original corporation Page & Shaw, Incorporated. It certainly did not authorize that corporation to transfer the use of the name Page & Shaw to another company, organized for carrying on an entirely different kind of business. *Lodge* v. *Weld,* 139 Mass. 499. *Fairfield* v. *Lowry,* 207 Mass. 352. *C. H. Batchelder & Co. Inc.* v. *Batchelder,* 220 Mass. 42, 46.

The plaintiffs have a joint and concurrent interest in preventing the use of the names Page and Shaw by the defendant chocolate company. Their consent in writing is required in order to justify that use. *Morse* v. *Hall,* 109 Mass 409. *Lodge* v. *Weld, supra.* See *Cadigan* v. *Brown,* 120 Mass. 493, 494. We cannot say that the defendant Dunham is improperly joined, in view of the allegations of the bill. The objection of multifariousness is not tenable. *Lovejoy* v. *Bailey,* 214 Mass. 134, 151. It is not necessary at this stage of the case to consider whether the plaintiffs are entitled to damages or profits. See *Lawrence* v. *Hull,* 169 Mass. 250; *Kaufman* v. *Kaufman,* 223 Mass. 104. The plaintiffs state a case entitling them to an injunction, under the statute. G. L. c. 110, § 7. *Bowman* v. *Floyd,* 3 Allen, 76. *C. H. Batchelder & Co. Inc.* v. *Batchelder, supra.* That requires the overruling of the demurrer. In accordance with the report, the defendants are to answer to the bill as amended.

*Ordered accordingly.*