THERESA I. SPEAR & others *vs.* H. V. GREENE COMPANY & others.

Suffolk.  March 22, 23, 1923. — September 14, 1923.

Present: RUGG, C.J., DECOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Equity Pleading and Practice,* Parties; Bill, multifariousness.  *Equity Juris-diction,* To relieve from results of fraud, Rescission of contract, Multi-plicity of actions or suits.  *Contract,* Rescission.  *Fraud.  Corporation.*

While, in order for a suit in equity to be maintained by a few individuals on behalf of a large number who cannot be joined readily as parties, it is not essential that the interest of each member of the class be identical in all aspects with that of the named plaintiffs, nevertheless it must appear from the allegations of the bill that the plaintiffs are fairly representative of the class whom they assume to represent, not only in that there is shown a common relationship to a definite wrong but also that the wrong is subject to redress by some common relief beneficial to all the class.

Neither mere community of interest in the questions of law or of fact at issue in a controversy or in the kind of relief to be afforded nor mere avoidance of multiplicity of suits is sufficient to give equity jurisdiction of a suit to relieve from fraud, brought by a few individuals on behalf of a large number who cannot be joined readily as parties.

Because of the facts that the issues sought to be settled were not homogeneous, that antagonistic interests arising between numerous sets of parties were ranged on one side and on the other, and that relief was sought respecting many distinct and diverse matters, equity should not take jurisdiction of a suit in equity, brought by forty individuals as representing themselves and sixty thousand others who have been defrauded by acts of the defendants, against three corporations, a voluntary association called a trust and a number of individuals, where it appears from the allegations of the bill that some of the plaintiffs and of those whom they assumed to represent were holders of stock and of voting certificates in one of the corporations, others were subscribers who had made partial payments for shares of stock and voting certificates in that corporation, each of four other groups maintained, respectively, like relations to the second corporation and to the trust, and a further group were stockholders in the third corporation; that about $14,-000,000 had been collected by the defendants of which about $5,500,000 had been retained as secret and fraudulent gains and the balance had been turned over to the first and to the second corporations and to the trust; that diverse claims were set forth against numerous individual defendants; that, while it was alleged that the frauds perpetrated upon the plaintiffs were by reason of a conspiracy and concerted action among the defendants, there was no joint wrong suffered by all the classes but each of the plaintiffs had been defrauded by different false representations and had suffered separate and diverse wrongs.

While in appropriate instances courts of equity will look through the form of things to their substance and may thus ignore corporate forms, that could hardly be done in a suit of the character above described, where the averments of the bill showed that there were many innocent stockholders in the different corporations and shareholders in the trust, whose interests might require them to prefer to adhere to the corporate entity or trust or to seek different courses to protect their several investments.

The bill above described was not a stockholder's bill.

BILL IN EQUITY, filed in the Supreme Judicial Court on July 13, 1922, and afterwards amended, by forty individual plaintiffs and by three others who were permitted to intervene as plaintiffs, against H. V. Greene Company, Inc., Commercial Finance Corporation, and Mutual Finance Corporation, three Massachusetts corporations; a group of individuals described as trustees of the First People's Trust; those trustees individually; and numerous other persons who were alleged in the bill to have been connected as officers, directors, or otherwise at various stages with the affairs of the corporate defendants. The prayers of the bill were for rescission of the various contracts made by the individual plaintiffs with some one or more of the defendant organizations and for coördinated relief looking to a restora-

tion to the individual plaintiffs of sums paid out or lost by reason of alleged fraudulent transactions by the defendants.

The bill, without annexed exhibits, occupied eighty-nine pages of the printed record. Allegations in the stating part of the bill are described in the opinion. The defendants demurred on several grounds, among others being multifariousness variously detailed, misjoinder and nonjoinder of parties, and misjoinder of causes of action.

The suit came on to be heard upon the demurrers before *DeCourcy*, J., who, being of the opinion that the questions raised thereby so affected the merits of the controversy that before further proceedings the matter ought to be determined by the full court, reserved the case on the bill as amended and the demurrers for determination by the full court, it being stipulated by the parties that, if the demurrers should be sustained, the bill was to be dismissed, unless otherwise ordered by the full court.

*F. Ranney*, (*W. H. Hitchcock* with him,) for the trustees of the First People's Trust.

*B. J. Killion*, for Henry V. Greene and H. V. Greene Company.

*W. J. Barry*, for the executrix of the estate of Henry B. Robinson.

*F. N. Balch*, for Edmund C. Campbell.

*G. L. Mayberry*, (*W. Powers & D. Needham* with him,) for Commercial Finance Corporation and Mutual Finance Corporation.

*F. H. Chase*, (*J. A. Locke & J. D. Taylor* with him,) for the plaintiffs.

*G. W. Pearson*, (*F. H. Pearson* with him,) for intervenor.

RUGG, C.J. This suit in equity has been reserved for determination on bill and demurrers. The plaintiffs, about forty in number, fall into seven separate groups: (1) holders of stock and voting certificates in the Commercial Finance Corporation, (2) subscribers who have made partial payments for shares of stock and voting certificates in the Commercial Finance Corporation, (3) holders of stock and voting trust certificates in the Mutual Finance Corporation, (4) subscribers who have made partial payments for shares

of stock and voting certificates in the Mutual Finance Corporation, (5) holders of certificates of beneficial interest in the First People's Trust, a voluntary association issuing certificates representing fractional ownership of property held by the trustees of that trust, (6) subscribers who have made partial payments toward certificates of beneficial interest in the First People's Trust, (7) holders of stock in the H. V. Greene Company. The plaintiffs bring the bill in behalf of themselves and of all others similarly situated.

The defendants are the three corporations already mentioned, certain persons as they are trustees of the First People's Trust, and other individuals, most if not all of whom have been connected in some capacity with one or more of the corporations or with the First People's Trust.

It is averred in the bill that certain of the defendants in December, 1917, contrived a conspiracy for the purpose of enriching themselves by swindling large numbers of people of slender means ignorant of business methods each out of a comparatively small sum of money, but aggregating very large amounts. The scheme in brief was to organize a series of corporations, to sell preferred and common stock therein by means of fraudulent contracts, the defendant H. V. Greene taking most if not all of the common stock for selling the preferred stock. Pursuant to this scheme the Commercial Finance Corporation was organized as a corporation under the laws of this Commonwealth in December, 1917, with a capital of $2,000,000 divided in equal amounts of preferred and common stock, the latter alone having voting power. A contract was forthwith made by it with H. V. Greene whereby the latter agreed to sell the preferred stock at $47.50 per share, its par value being $50 per share, receiving for his agreement substantially the whole of the common stock. The price at which the stock should be sold was to be fixed by Greene, who was to retain all sums received from the purchaser in excess of the price fixed. The shares were to be sold on the instalment plan upon agreements running for long terms. The first payment, which was larger than the subsequent payments, and usually equal to the difference between the price fixed by Greene and

the amount for which he had agreed to sell the stock of the company, was appropriated by Greene or his assignee. The instalment contracts for stock subscriptions were turned over to the corporation with a promissory note of the purchaser for the balance of the purchase price, and subsequent collections were made by the corporation at its own expense. To induce purchasers to buy, the stock was sold in " blocks " consisting of two shares of preferred stock and one of common stock, or multiples thereof, the latter being contributed by Greene. Each block of three shares was sold for $130, being $20 less than the par value of the three shares, but $35 in excess of the price for which Greene had agreed to sell the two shares of preferred stock, that excess being kept by Greene, and a note of the purchaser for the balance being turned over to the corporation. The purchaser under a subscription contract was not entitled to receive any shares until the last instalment of the purchase price was paid. Until then he had no right to receive any interest or dividends and his contract was subject to cancellation upon nonpayment of any instalment with forfeiture of all sums theretofore paid. Elaborate and carefully planned misrepresentations and concealment of material facts were prepared, devised to stimulate the imagination, play upon the prejudices, warp the judgment and excite the cupidity of ignorant and susceptible persons with respect to a supposed investment of money. Many of the subscribers were and were designed to be illiterate or unacquainted with the English language and unable to read or understand the contracts signed by them.

The H. V. Greene Company was organized in January, 1918, as a Massachusetts corporation, at first as a sales medium, though later its shares were used by way of exchange to allay the suspicions of subscribers or shareholders in the Commercial Finance Corporation who had become distrustful. The scheme was fruitful in procuring subscriptions to large amounts.

In substance and effect the contract for the sale of stock by Greene was grossly unfair to the corporation and without sufficient consideration paid by Greene, and resulted in-

evitably from the outset in impairment of the capital stock of the corporation and in the fraudulent enrichment of Greene and his associates and the corporation bearing his name.

As a part of the general scheme as alleged large loans without adequate security have been made to the defendants, their friends and associates, and to corporations owned by them, and large sums have been divided fraudulently among the defendants and their associates in the form of commissions, salaries, dividends and otherwise out of the subscriptions thus fraudulently procured. The defendants as officers of the corporation have been faithless to their duties to it. All these acts have caused great impairment of the capital of the corporation.

On September 23, 1918, as a part of the same general plan, the Mutual Finance Corporation was organized under the laws of this Commonwealth with preferred and common stock. The frauds used with reference to the sales of stock in the Commercial Finance Corporation were repeated in substance in selling its stock. That also was successful in reaping a large harvest of subscriptions, partial payments and payments in full.

In October, 1919, the First People's Trust was formed by the execution of a declaration of trust under which preferred and common shares were issued. These shares were sold in general by the same fraudulent methods pursued as to the two finance corporations. The several corporations and the trust were fraudulently and collusively managed and their several treasuries depleted, all for the benefit of some or all of the individual defendants.

Finally the H. V. Greene Company, which as the sales company had received a large income, though without substantial assets and the stock in which had been closely held by Greene, was used as a medium, through increase of its capitalization and exchange of its stock, for the acquisition of stock in the other companies.

It is said that sums aggregating about $14,000,000 have been collected, of which about $5,500,000 has been retained by the defendants as secret and fraudulent gains, and the

balance turned over to the finance corporations and the trust; that in all there are about sixty thousand subscribers to the shares of these ventures, and that of this number about twenty-five thousand have not paid their subscriptions in full and under the terms of their contracts have no rights as stockholders or to the return of money, aggregating more than $2,000,000, already turned over as partial payments, which if the contracts are valid is to be forfeited.

By virtue of the common stock Greene and his associates held absolute control of the management of all corporations and of the trust.

There are ample allegations as to the participation of the defendants in the frauds, either as original parties or by ratification with knowledge.

The numbers of persons interested as stockholders, shareholders and holders of contracts are so great that to require them to act separately would entail multiplicity of suits and it is imperative for their protection that the assets be marshalled.

This is only a skeleton of the allegations of the bill, which is of considerable length and contains in great detail averments of the general fraudulent scheme and the acts performed in execution of it.

The prayers of the bill are for rescission of all contracts, notes and transactions thus procured by fraud, for the establishment of a constructive trust or equitable charge upon the proceeds of the frauds for the benefit of all stockholders and subscribers, for an accounting, for damages against the conspirators, for receivership of the corporations and the trust, for equitable and *pro rata* distribution of assets and moneys to be recovered among all the victims of the fraud who participate in these proceedings, and for other kinds of relief which need not be specified.

Several defendants have demurred. They thereby admit for the purposes of this decision the truth of all the allegations of fact set forth in the bill.

The frauds charged in the bill are great in magnitude and peculiarly vicious in their nature in that they were designed and practised chiefly to victimize the ignorant and frugal

poor. The allegations appeal strongly to sympathy. But well settled principles of equitable jurisprudence cannot be broken on account of sentiment. This is a government of laws and not of emotions.

It is manifest that the bill is framed on the theory that the plaintiffs sue as representatives of several classes. They do not seek merely to recover in their own right. The relief sought involves inevitably the sixty thousand others who have been duped by the frauds and have thus become interested in these several organizations, as well as the forty persons who are plaintiffs. It affects all their property rights in these organizations aggregating millions of dollars, as well as the comparatively small sums of these plaintiffs.

Class bills may be maintained where a few individuals are fairly representative of the legal and equitable rights of a large number who cannot readily be joined as parties. The persons suing as representatives of a class must show by the allegations of their bill that all the persons whom they profess to represent have a common interest in the subject matter of the suit and a right and interest to ask for the same relief against the defendants. It is not essential that the interest of each member of the class be identical in all aspects with that of the plaintiffs. The interest must arise out of a common relationship to a definite wrong. There must be a joint prejudice to all the class whom the plaintiffs seek to represent. The wrong suffered must be subject to redress by some common relief beneficial to all. The plaintiffs must be fairly representative in all essential particulars of the class for which they seek to act. It was said in *Duke of Bedford* v. *Ellis*, [1901] A. C. 1, 8, " Given a common interest and a common grievance, a representative suit was in order if the relief sought was in its nature beneficial to all whom the plaintiff proposed to represent." In *Cadigan* v. *Brown*, 120 Mass. 493, at pages 494, 495, are found these words: " Generally, when several persons have a common interest in the subject matter of the bill, and a right to ask for the same remedy against the defendant, they may properly be joined as plaintiffs. . . . the plaintiffs, though

they hold their rights under separate titles, have a common
interest in the subject of the bill.   They are affected in the
same way by the acts of the defendants, and seek the same
remedy against them.   There is no danger of confusion in
the trial, or of injustice to the defendants, from the joinder
of the plaintiffs; but the rights of all parties can be adjusted
in one decree, and a multiplicity of suits is prevented."
The same principle is declared in numerous other decisions.
*Pickett* v. *Walsh,* 192 Mass. 572, 590.   *Almy* v. *Almy, Bige-
low & Washburn, Inc.* 235 Mass. 227, 234.   *Lovejoy* v.
*Bailey,* 214 Mass. 134, 151.   *Page* v. *Page & Shaw Chocolate
Co.* 240 Mass. 505.   *Stodder* v. *Rosen Talking Machine Co.*
241 Mass. 245.   *Digney* v. *Blanchard,* 226 Mass. 335, 339.
*Ballou* v. *Hopkinton,* 4 Gray, 324.   *Parker* v. *Nightingale,*
6 Allen, 341.   *Reynolds* v. *Davis,* 198 Mass. 294, 301.   *Com-
missioner of Banks* v. *Cosmopolitan Trust Co.* 240 Mass.
254, 259.   *Hartford Life Ins. Co.* v. *Ibs,* 237 U. S. 662.
*Lockwood Co.* v. *Lawrence,* 77 Maine, 297.   *Mayor of York*
v. *Pilkington,* 1 Atk. 282.   *Gray* v. *Rothschild,* 112 N. Y. 668.
*Cloyes* v. *Middlebury Electric Co.* 80 Vt. 109, 117.   *Bradley*
v. *Bradley,* 165 N. Y. 183.   *Ashmead* v. *Colby,* 26 Conn. 286.
*Scott* v. *Donald,* 165 U. S. 107, 116.   *Shaw* v. *Norfolk County
Railroad,* 5 Gray, 162.

Mere community of interest in the questions of law or of
fact at issue in a controversy or in the kind of relief to be
afforded does not go far enough to warrant a class suit.
Avoidance of multiplicity of suits is not enough.   *Equitable
Life Assurance Society of the United States* v. *Brown,* 213
U. S. 25, 51.   *Rogers* v. *Boston Club,* 205 Mass. 261.   *Tri-
bette* v. *Illinois Central Railroad,* 70 Miss. 182, 187.

It is plain that the allegations of the bill do not conform
to these settled principles.   There are at least seven different
classes joined as plaintiffs.   They have interests, some in
one and some in another of three different corporations and
of the trust.   There are diverse claims set forth against
numerous individuals.   There is no community of interest
on the part of these several classes.   The bill seeks a rescis-
sion of all uncompleted contracts and of all purchases of
stock, and as to stockholders in the H. V. Greene Company

double rescission, first, of the exchange for shares in that corporation, and second, of the original subscription or purchase of stock in another organization. There is no joint wrong suffered by all the classes. Each of the plaintiffs has been defrauded by different false representations and has suffered separate wrongs from those affecting other plaintiffs. The several classes have not been injured by the same wrong. It may be for the interest of a subscriber who has defaulted in his payments to rescind his contract, and not for the interest of one who has fully paid for and acquired his stock to rescind. The interests of the stockholders of the different corporations and of the shareholders in the First People's Trust well may be antagonistic between each other. There may have been transfers of stock and the rights of the buyer conceivably may be different from those of the original purchaser. The bill shows on its face that the First People's Trust is in better condition than the corporations. It cannot be presumed that the shareholders in that trust have a common interest in the frauds alleged and in the relief sought with respect to the other classes of plaintiffs.

The bill seeks to disregard the corporate existence of the corporations and to treat their assets as a common fund. While courts in appropriate instances look through the form of things to their substance and may thus ignore corporate forms, that can hardly be done where as here the averments show that there are many innocent stockholders in different corporations and shareholders in a trust whose interests may require them to prefer to adhere to the corporate entity or trust or to seek different courses to protect their several investments. The interests of the corporate defendants and the relief to be afforded against each may be different. The case at bar on this point falls within the principles declared in decisions where these questions have been discussed with decisive clearness and convincing fullness. It is governed by their binding authority. *Rogers* v. *Boston Club,* 205 Mass. 261, 268. *Maguire* v. *Reough,* 238 Mass. 98. *Hale* v. *Allinson,* 188 U. S. 56, 75, 79. *Watson* v. *Huntington,* 215 Fed. Rep. 472. *Bouton* v. *Van Buren,* 229 N. Y. 17. *Warnock Uniform Co.* v. *Garifalos,* 224 N. Y. 522.

This is not a stockholders' bill. The plaintiffs do not seek to enforce relief in the name and for the benefit of the corporations or the trust. The bill plainly does not conform to the requirements of a proceeding of that nature. *Bartlett* v. *New York, New Haven & Hartford Railroad,* 221 Mass. 530. *Hayden* v. *Perfection Cooler Co.* 227 Mass. 589. *Hawes* v. *Oakland,* 104 U. S. 450.

There is no inflexible rule by which to determine whether a bill is multifarious. Whether objection shall be sustained on this ground must be decided largely by the circumstances of each case. *Robinson* v. *Guild,* 12 Met. 323, 328. *Bliss* v. *Parks,* 175 Mass. 539, 543. *Coram* v. *Davis,* 209 Mass. 229, 248, 249. *Cosmopolitan Trust Co.* v. *Mitchell,* 242 Mass. 95, 123. *Campbell* v. *Mackay,* 1 Myl. & Cr. 603. *Mack* v. *Latta,* 178 N. Y. 525. *Brown* v. *Tilley,* 25 R. I. 579. *Hayden* v. *Thompson,* 71 Fed. Rep. 60, 67.

The averments of the bill set forth numerous distinct wrongs suffered not only by the seven different classes but by each individual of those classes. Confessedly each plaintiff and each member of the calsses has a distinct and separate cause of action for all injury sustained by him against those who have done him wrong. The relief afforded cannot in the nature of the circumstances disclosed by the averments be common to all the plaintiffs, nor can there be community of benefit. The innocent shareholder or stockholder in the one of the organizations best off financially cannot be dealt with on the same footing as his fellow in the organization in worst financial plight. It cannot be presumed that all will desire or that all ought in equity to be put in the same category with others. The several corporations apparently have antagonistic interests as between themselves.

The issues to be settled are not homogeneous in any aspect. Antagonist interests arise between numerous sets of parties ranged on one side and on the other.

The averments that the moneys collected ought to be impressed with a trust show at best that there must be different trusts for different classes of parties having diversity of interest.

Relief is sought respecting many distinct and separate matters.  They are not sufficiently bound together by allegations of fraud and conspiracy to render them appropriate matters for inquiry in a single suit under well settled chancery principles. *Davis* v. *Peabody,* 170 Mass. 397, and cases collected. *Mesisco* v. *Giuliano,* 190 Mass. 352. *Saltman* v. *Nesson,* 201 Mass. 534, 539. *Reno* v. *Cotter,* 236 Mass. 556, 563. *Krauthoff* v. *Attorney General,* 240 Mass. 88, 92.

An increasing liberality in the allowance of the combination of complaints for injuries to distinct rights by a common wrong doubtless may be traced in the decisions.  We are not disposed to narrow that tendency.  But it is plain, notwithstanding the able argument addressed to us in behalf of the plaintiffs, that the present bill far outruns the utmost limits of sound equitable principles.

Without emphasizing any one of these factors or considerations, standing alone, as decisive, it is clear that all of them grouped together show beyond peradventure that this bill cannot be maintained.

It is unnecessary to discuss the other grounds of demurrer.  For the reasons already stated the demurrers must be sustained.  In accordance with the stipulation of the parties embodied in the reservation, the entry may be

*Bill dismissed.*